# SPENCER H. GALE, Respondent, v. J. KENNARD & SONS CARPET COMPANY, Appellant.

### St. Louis Court of Appeals, April 7, 1914.

1. **CONTRACTS: Offer and Acceptance: Requisites of Offer.** If an offer is incomplete or so uncertain and indefinite as to leave essential terms of the proposed contract in doubt, though there be an acceptance thereof, there can be no meeting of the minds, and hence no binding contract.

2. ———: **Oral Contracts: Failure to Reduce Terms to Writing as Agreed.** Where parties have agreed on the terms of a contract, the mere fact that they agree that its terms shall be reduced to writing at a future date does not negative the existence of a present contract, nor invalidate it, if its terms be never reduced to writing.

3. ———: **Offer and Acceptance: Qualified Acceptance.** Where a letter contained an offer to enter into a contract for a longer period than one year, the acceptance thereof for one year, with the assent of the person making the offer, did not amount to a rejection of the offer as made, since the departure from the terms of the offer became immaterial when assented to by both parties.

4. ———: ———: **Implied Acceptance.** A finding of the existence of a contract is warranted, where a proposition sufficiently clear is submitted to another to act upon, and the person to whom it is submitted makes such statement or does such act with respect thereto as would lead an ordinarily prudent person, acting in good faith, to believe that it has been accepted, and the proposer proceeds to the fulfillment of the conditions and terms imposed.

5. **MASTER AND SERVANT: Contracts: Renewal of Contract of Employment: Sufficiency of Offer.** Where an employee had conferred with his employer with respect to a letter containing terms on which he would renew his contract of employment and had been told by the employer that the matter would be given consideration, he was entitled to assume, on calling the attention of the employer to the letter, at a later time, and receiving his oral assent to the renewal of the contract, that the employer had its terms in mind and assented thereto.

6. ———: ———: ———: ———. Plaintiff, by his first contract of employment, was assured compensation of $3500 for the year. This contract was in force more than four years.

Gale v. Carpet Co.

He then entered into a contract whereby his assured compensation was $7800 a year, and this contract was renewed for the next two years, and he then entered into a contract under which his assured compensation was $6500 a year. At the end of that year he wrote defendant's president that if defendant wished "to renew" the contract, plaintiff would decline to accept a less "guarantee" than he had received "in years past." *Held*, that plaintiff's letter was sufficiently complete, certain and definite, as an offer, that its acceptance by defendant for a period of one year would constitute a binding contract between the parties; the letter being intended as an offer to renew the existing contract, with the exception that the amount guaranteed as compensation should be $7800 instead of $6500—the statement that he declined to accept a less "guarantee" then he had received "in years past," referring to the three years in which he was assured a compensation of $7800 per annum and not to the period preceding those years during which he received an assured compensation of only $3500 per annum.

7. **APPELLATE PRACTICE: Conclusiveness of Verdict.** Where the evidence with respect to a disputed issue of fact is conflicting, the question is for the jury to determine, and their finding is conclusive, on appeal.

8. **MASTER AND SERVANT: Action for Services: Pleading: Variance.** Where, in several employment contracts, plaintiff was "guaranteed" a specified compensation, the term "guaranty" was used in the sense of assurance that his compensation earned should amount to a specified sum, and, plaintiff having sued for the amount of such assured compensation, there was no failure of proof because the contract pleaded was for "salary," while that proved was for a "guaranty;" such proof operating, at most, as a mere variance, of which defendant could not avail itself.

9. **APPELLATE PRACTICE: Estoppel to Allege Error.** A party is not in position to complain of an instruction where he offered an instruction in the precise form of the one assailed.

10. **MASTER AND SERVANT: Action for Services: Evidence.** In an action for the value of services, as fixed by an alleged contract of employment, consisting of a letter written by plaintiff to defendant and an oral acceptance thereof by defendant's president, the making of which contract was denied by defendant, *held* that defendant was not prejudiced by the exclusion of certain letters written by plaintiff to its president, offered for the purpose of showing that plaintiff had communicated at various times with defendant's president with respect to other matters, as tending to negative the idea that he did not have ample opportunity to have the matter of his contract definitely determined, especially in view of the fact that de-

fendant was permitted to show that such letters had been written.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Shields*, Judge.

AFFIRMED.

*Luther Ely Smith* for appellant.

(1) Defendant's demurrers to the evidence should have been sustained. As to the first count: (a) There was no express contract as pleaded. Plaintiff's letter of November 5, 1909, even though the defendant had actually written upon it the words "Accepted for one year," was too indefinite and uncertain to constitute a contract. No figure as to compensation was named either in that letter or in the February conversation relied on, or in any intervening communication, nor was any mention made of any one of numerous other items set out in minute detail and regarded as essential in each of the preceding contracts. Unless the terms in an offer are sufficiently definite to form the basis of a contract, an acceptance does not constitute a meeting of the minds and there is no contract. Stone v. Union Trust Co., 150 Mo. App. 331, 341-2; Lee v. Dodd, 20 Mo. App. 271; Whedon v. Ames, 28 Mo. App. 203; Bourne v. Shapleigh, 9 Mo. App. 64; Methudy v. Ross, 10 Mo. App. 101; Sparks v. Pittsburg Co., 159 Pa. St. 297; 1 Page on Contracts, Secs. 27, 45; Elliott on Contracts, Sec. 27; Northrup v. Coulter, 150 Mo. App. 639; Eaton v. Coal Co., 125 Mo. App. 194; Van Slyke v. Broadway Ins. Co., 115 Cal. 664; 9 Cyc. 249; Concannon v. Mining & Milling Co., 156 Mo. App. 79; Gray v. Railroad, 143 Mo. App. 251; Strange v. Crowley, 91 Mo. 287; Chapin v. Cherry, 243 Mo. 375; Havens v. Ins. Co., 11 Ind. App. 315; Ridgway v. Wharton, 6 H. L. Cas. 304; Jones v. Daniel, 2 Ch. 332; Hassey v. Horn Payne, 4 App. Cas. 311; Baurman v. Binzen, 16

N. Y. Sup. 342; Appleby v. Johnson, L. R. 9 C. P. 158; Anderson v. Dezonia, 23 Ill. App. 422. (b) There was no express contract as pleaded. Preliminary negotiations are insufficient to constitute a contract. Plaintiff's letter of November 5, 1909, shows on its face that it was but a preliminary step in negotiations, leading up to a formal proposal—it was, as plaintiff in said letter denominates it, a "suggestion," an "expression of his (plaintiff's) views," as plaintiff also describes it. The acceptance of a letter, statement or inquiry constituting a preliminary step and not an offer constitutes no contract. 1 Page on Contracts, Secs. 26, 27; Elliott on Contracts, Sec. 27; Bourne v. Shapleigh, 9 Mo. App. 64; Methudy v. Ross, 10 Mo. App. 101; Ford v. Gebhart, 114 Mo. 298; Cheney v. Bigelow Wire Works, 142 Mass. 442; Commercial Telegraph Co. v. Smith, 47 Hun, 494; Gray v. Railroad, 143 Mo. App. 251; James & Sons v. Fruit Jar Co., 69 Mo. App. 207. (c) There was no express contract as pleaded. No written or formal contract was drawn. The undisputed testimony clearly shows that it was contemplated that a definite written draught of contract, embodying specific details should be drawn and that on that written draught, if at all, there should be a meeting of the minds and not otherwise. The "acceptance" of his November 5, 1909, letter was not and could not be regarded as constituting a meeting of the minds. Railroad v. Joseph, 169 Mo. App. 174, 182; Mfg. Co. v. Lumber Co., 115 Mo. App. 114; Methudy v. Ross, 10 Mo. App. 101; Bourne v. Shapleigh, 9 Mo. App. 64; Spinney v. Downing, 108 Cal. 666; Des Boulets v. Gravier, 1 Mart. (La. N. S.) 420; Morrill v. Railroad, 10 Nev. 125; Tel. Co. v. Smith, 47 Hun, 494; Sparks v. Pittsburg Co., 159 Pa. St. 295; Runyon v. Wilkinson, 57 N. J. L. 420; Water Comrs. v. Brown, 32 N. J. Law (3 Vroom. 504). (d) There was no express contract as pleaded. A qualified acceptance is a rejection of the original offer. Even though the

letter of November 5, 1909, could be regarded as sufficient in law to constitute a contract when unqualifiedly accepted, yet the evidence shows that it was not unqualifiedly accepted as made. The letter of November 5, 1909, if regarded as an offer, offered three things— guarantee of no less than in previous years; a closer alliance to the department and the house; and a tenure of service of more than twelve months. The alleged "acceptance" "for one year" was a rejection of the original offer, which original proposition is again renewed by plaintiff, and never accepted. There was no meeting of the minds. Chapin v. Cherry, 243 Mo. 375; Northrup v. Colter, 150 Mo. App. 639; Cangus v. Rumsey, 37 Mo. App. 297; Strange v. Crowley, 91 Mo. 287; Bruner v. Wheaton, 46 Mo. 213; Scott v. Davis, 141 Mo. 213; Union Service Co. v. Drug Co., 148 Mo. App. 327; Taylor v. Von Schraeder, 107 Mo. 206; Green v. Cole, 103 Mo. 70; Eads v. City of Carondalet, 42 Mo. 113; Robinson v. Farrell & Estes, 53 Mo. App. 582; Brecheisen v. Coffey, 15 Mo. App. 80; Jordan v. Norton, 4 M. & W. 155; 6 Ruling Cas. 142; Hyde v. Urench, 3 Beav. 334, 337; Sarran v. Richards, 151 Mo. App. 656; Lawson on Contracts, Sec. 16; Batavia v. Railroad, 126 Mo. App. 13; VerSteeg v. Becker-Moore Paint Co., 106 Mo. App. 257; Railroad v. Joseph, 169 Mo. App. 174; Mfg. Co. v. Lumber Co., 115 Mo. App. 114; Jordan v. Norton, 4 M. & W. 155 (s. c. 7, L. J. Ex. 281); Minneapolis, Etc., Co. v. Columbus Rolling Mills, 119 U. S. 149; Holland v. Eyre, 2 Simons & Stuart 194; Water Comrs. v. Brown, 32 N. J. Law (3 Vroom.) 504; Glass Works v. Barnes & Co., 86 Hun. 374, 376; Yore v. Bankers' Assn., 88 Calif. 609; Lewis v. Johnson, 143 N. W. 1127; Egger v. Nesbit, 122 Mo. 667; Morrell v. Tehama Con. M. & M. Co., 10 Nev. 125. (e) There was no express contract as pleaded. The construction placed by the parties themselves upon the contract defeats plaintiff's contention. Undisputed facts show that the parties by their conduct construed the terms of plain-

tiff's employment to be the same as in the year preceding the period in suit. Welch v. Mischke, 154 Mo. App. 728; Smith v. Crane, 169 Mo. App. 695; Shepard v. Bank, 15 Mo. 143; Powell v. Railroad, 65 Mo. 658; Shade v. Sisson, 115 Cal. 357; Kropp v. Brewing Co., 138 Mo. App. 49; Ideal Pump, Etc., Co. v. Ins. Co., 167 Mo. App. 566; Kirkeby v. White, 168 Mo. App. 626; Big Muddy Coal & Iron Co. v. St. Louis-Carterville Coal Co., 158 S. W. 420; Austin v. Shipman, 160 Mo. App. 206; Bank v. Hanks, 142 Mo. App. 110; Union Depot Co. v. Railroad, 131 Mo. 291; Topliff v. Topliff, 119 U. S. 149; Rose v. Carbonating Co., 60 Mo. App. 28. (f) There was no express contract as pleaded. A contract or bargain which in legal effect is "snapped up" is void. The undisputed evidence clearly shows that plaintiff "snapped up" the bargain with defendant knowing that Mr. Kennard was not thinking of the amount of compensation or anything else except the period of plaintiff's continuance in defendant's employ. The contract so attempted is void. Page on Contracts, Sec. 146; Singer v. Grand Rapids Match Co., 117 Ga. 86, 89; Manter v. Truesdale, 57 Mo. App. 435, 444; Germain v. Western Union Co., 137 Cal. 598. (2) As to the second count. There being no new express contract, the express contract for the previous year continued in full force, not only for the year ending November 30, 1910, covered by the first count, but through the period of five months covered by the second count. Bell v. Peper Tobacco Warehouse Co., 205 Mo. 475. And while plaintiff may disregard the express contract and sue upon an implied contract, he may not recover in excess of the express contract. (Plaintiff admits payment in compliance with the terms of that contract.) Suits v. Taylor, 20 Mo. App. 166; Davidson v. Bierman, 27 Mo. App. 655. (3) There is a failure of proof as to the first count. The contract pleaded in the first count was for a "salary," the contract proven (if proven) was for a "guarantee." The

previous contracts, carefully drawn, and the conduct of the parties show that they fully understood the meaning of each of these terms, and could and did use them accurately and intentionally. Plaintiff having pleaded one contract and proven another, should have been nonsuited. Laclede Construction Co. v. Tudor, 169 Mo. 137; Cole v. Armour, 154 Mo. 333, 350, 351; Taylor v. Sebastian, 158 Mo. App. 147, 155-6; Beck v. Ferrara, 19 Mo. 30; Barber v. Ozark Implement Co., 131 Mo. App. 717; Henderson v. Koenig, 168 Mo. 366; State ex rel. v. Speed, 183 Mo. 186; People ex rel. v. Myers, 42 Abb. L. J. 332, 11 N. Y. S. 217; Philibert v. Burch, 4 Mo. App. 470; Weems v. Delta Moss Co., 33 La. Ann. 971; Davis v. Drew, 132 Mo. App. 505; Mansur v. Botts, 80 Mo. 651; Lowry v. Mining Co., 65 Mo. App. 266; Leggett v. Exposition Co., 157 Mo. App. 115; Union Service Co. v. Moffet West D. Co., 148 Mo. App. 327; Benedict v. U. S., 176 U. S. 357; McNulta v. Corn Belt Bank, 164 Ill. 427; Thompson v. Phillips, 12 Ohio St. 617-8. (4) The court erred in giving plaintiff's first instruction. It submitted a question of law to the jury as to what constitutes a contract, rather than a question of fact. Bass v. Jacobs, 63 Mo. App. 393; Chapman v. Railroad, 146 Mo. 481. (5) The court erred in excluding the letters passing between plaintiff and defendant. The contents of those letters and particularly that of February 25, 1910 (after or on the day that plaintiff claimed the February conversation occurred) were most persuasive evidence in support of the defense. Nor did the general statement permitted by the court, namely, that they were business letters and contained no reference to compensation or employment cure the error. They should have been admitted so that the jury might themselves see and know the extent of the dealings and communications between plaintiff and defendant's president. Higgins v. Dellinge, 22 Mo. 397; Warlick v. Patterson, 58 Mo. 408.

*Jones, Hocker, Hawes & Angert* filed argument for respondent.

ALLEN, J.—This is an action to recover the sum of $2050 and interest, claimed to be the balance due plaintiff for services rendered the defendant corporation in the capacity of manager of a "department" of defendant's mercantile business, conducted in the city of St. Louis. A trial before the court and a jury resulted in a verdict and judgment for plaintiff for the amount of his claim, and the case is here upon defendant's appeal.

The petition contains two counts. The first of these is based upon an alleged express contract of employment for a term of one year from December 1, 1909 to November 30, 1910, at a salary of $7800 per year, plaintiff averring that he had fully performed the duties required of him under such contract, and that he had been paid the sum of $6500 by defendant on account thereof, leaving a balance of $1300 due thereon.

The second count is upon *quantum meruit* for services alleged to have been rendered by plaintiff, at defendant's special instance and request, during the period beginning December 1, 1910, and ending April 30, 1911. Plaintiff avers that such services were reasonably worth the sum of $3250, which sum defendant promised to pay plaintiff; that defendant paid plaintiff on account thereof the sum of $2500, leaving a balance of $750 claimed to be due.

The answer to the first count admits that plaintiff was employed by defendant, in connection with the department of defendant's business referred to in the petition, from December 1, 1909, to November 30, 1910, but denies that there was any contract to pay plaintiff $7800 per year, denies that any balance is due plaintiff, and avers that defendant paid plaintiff $6500 for his services, that the said sum was in full payment

therefor, and that it was so received and accepted by plaintiff.

The answer to the second count admits that plaintiff rendered services to defendant from December 1, 1910 to April 30, 1911, but denies that such services were reasonably worth the sum of $3250 or anything in excess of $2500, denies that defendant promised to pay plaintiff therefor the sum of $3250 or anything in excess of $2500, and avers that the sum of $2500 was paid by defendant to plaintiff in full payment therefor, which was so received and accepted by plaintiff.

The reply is a general denial of the new matter contained in the answer.

The evidence discloses that plaintiff entered defendant's employ on September 1, 1901, under a contract evidenced by a letter written by plaintiff to defendant and the latter's written acceptance of the terms of the proposal therein contained. The contract thus entered into provided that plaintiff was to take charge of and conduct the department of gas and electric fixtures, lamps, etc., in defendant's business for a term of five years, beginning on said September 1, 1901; that plaintiff was to receive a salary of $3500 per year, payable weekly, and, in addition thereto one-fourth of the net profits of the business of the department, payable annually, after deducting from the gross profits thereof all the expenses of the department including plaintiff's salary, the department's *pro rata* share of the general expenses of defendant's business and six per cent annual interest on all capital employed in the department.

It appears that the parties operated under this contract for more than four years, but not for the full term thereof. Plaintiff testified that he received thereunder from $7200 to $7800 per year, though defendant's secretary, testifying from memoranda, stated plaintiff's average earnings during this period amounted to $7016.66 per year.

A new contract was entered into under date of January 9, 1906, to cover the period from December 1, 1905, to November 30, 1906. This contract provided for salary and commissions, stating that plaintiff was to receive $100 per week, $500 additional at the end of each period of three months (a total of $7200 per year), and in addition thereto five per cent on all sales in his department in excess of $100,000. After the execution of the contract defendant's president personally guaranteed that plaintiff's commissions together with his salary would amount to not less than $7800 for the year covered by the contract. It appears that under this contract, plaintiff received for the year $8310.27.

The next contract between the parties was under date of February 14, 1907, for the year beginning December 1, 1906, and ending November 30, 1907. It likewise provided that plaintiff would receive $100 per week and $500 quarterly, totaling $7200 per year. In addition thereto plaintiff was to receive five per cent commission on all sales in his department over and above the amount of such sales required to pay the expenses of the department, setting forth in detail the items of expense to be charged against the department. Such commission was to be paid at the end of the year, and defendant guaranteed that it would not be less than $600, making plaintiff's total compensation at least $7800 for the year.

The next contract between plaintiff and defendant, of date February 12, 1908, and which covered the period from December 1, 1907, to November 30, 1908, was identical in terms with the contract for the immediately preceding year, except as to certain provisions relating to the items of expense to be charged against the department. It appears that no commissions were earned in this department during these two years, i. e., from December 1, 1906, to November 30, 1908, nor during any of the subsequent period with which we

are here concerned. Plaintiff, however, for the two years last mentioned, received payments aggregating $7800 per year, in accordance with the said contracts.

The next contract bore date January 21, 1909, and related to the year beginning December 1, 1908, and ending November 30, 1909, the year immediately preceding that covered by the first count of plaintiff's petition. It provided that plaintiff should receive twenty-five per cent of the net profits of his department, the expenses thereof to be arrived at in the manner as provided in the contract for the preceding year; that plaintiff would ''be permitted to draw'' $125 per week, aggregating $6500 for the year, which was to be deducted from the profits of the department, plaintiff to receive one-fourth of the remainder of such profits. It further provided that should the department show a loss during the year the same would be charged to profit and loss, it being defendant's intention to guarantee plaintiff $6500 as compensation for the year.

It appears that plaintiff accepted the contract last above mentioned, reducing his guaranteed compensation from $7800 to $6500 for the year, after having been told by defendant's president that plaintiff's department had shown a loss, and plaintiff testified that defendant's president stated that all other employees of defendant had suffered a reduction in compensation for the preceding year on account of business depression, and that as plaintiff had received the full amount guaranteed to him for the preceding year he ought to accept less, as a ''guarantee,'' for the year covered by this contract; and that plaintiff thereupon agreed to accept a minimum of $6500.

Each of the above-mentioned contracts, with the exception of the first, as indicated above, were in the form of a letter or written proposal by defendant to plaintiff, signed by defendant's president and which plaintiff signed signifying his acceptance of the terms thereof.

For the next year, from December 1, 1909, to November 30, 1910, the year covered by the first count of plaintiff's petition, there was no such written contract. Plaintiff continued in defendant's employ, during such year, and until April 30, 1911, being paid $125 per week, or $6500 per year; and his claim to further compensation is based upon a letter written by him to defendant's president, constituting, as is claimed, a proposal, and which is said to have been orally accepted by defendant's president with a certain modification.

It appears that matters of this sort were attended to personally by Mr. Kennard, defendant's president, who, it seems, was unwell and seldom at defendant's store during the latter part of 1909 and the early part of 1910. On November 5, 1909, plaintiff mailed to Mr. Kennard, at the latter's home in the city of St. Louis, the following letter:

"Mr. Sam Kennard,
    St. Louis, Mo.
"My Dear Mr. Kennard:
    "Permit me to express my sincere and deep regret for your temporary illness and the conditions which force me to write you what otherwise I should have preferred to discuss personally. It is furthermost from my wishes to cause you a moment's anxiety. However, in justice to the company and to me, I see no way, other than to write this letter.
    "My contract expires November 30th. Should you desire to renew it, I trust you will appreciate the injustice—the impossibility—of my again accepting less guarantee than I have had in years past. With my knowledge of this business, it is not sufficient that I make from it merely a living.
    "Should my suggestion be incompatible with your plans, it is better for my interests that I be apprised

of it at once, in order that I may make a change now, rather than later.

"On the other hand, should this contract be renewed I want to feel closer allied—not only to the fifth floor, but to the general interest of the business—to feel that I am a fixture of more than twelve months' standing. I want you to know that you may depend upon my loyalty to your best interests and thorough co-operation with any policy your judgment may see fit to adopt—or be adopted by anyone acting in your absence.

"Trusting you will give this your early consideration, I remain, with sincere wishes for your speedy recovery, and return to activity,

Most truly yours,

SPENCER H. GALE."

Plaintiff received no reply to this letter. Some time during the following month, viz., December, 1909, plaintiff had an interview with Mr. Kennard, at the latter's home, having arranged therefor by telephone. Plaintiff testified: "I went out, saw Mr. Kennard; after passing the usual remarks on the day, I said, 'What about my letter?' He produced the letter; he says: 'What do you mean by this clause, "closer allied?"' I said, 'I mean what I say. I want to be closer allied with you. All the talk was from year to year, because you understand me, but if you have a successor, I want a contract based on the terms of my previous contract for a period long enough for me to demonstrate to your successor that I will co-operate with him as thoroughly as I have with you. I want you to understand that's the way I feel. I want you to so state it to your successor.' Mr. Kennard said, 'Very well, Mr. Gale. I will consider this and let you know.' "

Mr. Kennard testified that he had no recollection of receiving the letter or of the conversation referred

to, but that he did recall the use of the words "closer
allied" by plaintiff on some occasion. He testified that
plaintiff came to see him, at his home, some time in
December, 1909, or January, 1910, at which time they
discussed conditions in plaintiff's "department;" that
he then told plaintiff that the business was unsatisfac-
tory and that he would decline to continue the depart-
ment "along the lines it had been running;" and that
they discussed the reduction of stock, the "closing
out" of certain "departments," and working along on
that plan for six months or a year.

Plaintiff testified that after the interview in De-
cember, relative to his letter, he waited for an oppor-
tunity to see Mr. Kennard, and finally saw him on
the fifth floor of defendant's store, where plaintiff's
department was located; that after going through the
department with Mr. Kennard, discussing other mat-
ters, he said: "Mr. Kennard, what about my letter?";
that Mr. Kennard turned to him and said: "Mr. Gale,
we will accept that for one year; that is all right;"
that plaintiff thereupon said: "What about the con-
tract?" to which Mr. Kennard replied: "Oh that can
be drawn up at any time."

Plaintiff's testimony as to this conversation is
corroborated by that of a Miss Smith, then a stenog-
rapher in plaintiff's department of defendant's store,
and who was still in defendant's employ at the time
of the trial below, and by that of a Mr. Burch, then
employed in the same department. Miss Smith stated
that she heard Mr. Kennard say, "That's all right;"
that plaintiff then said something about having a con-
tract drawn up, and that Mr. Kennard said: "That
can be done at any time."

Mr. Burch testified that he overheard the conver-
sation, and related what was said, closely corroborat-
ing plaintiff's version thereof. It appears that, fol-
lowing the conversation, plaintiff asked this witness
whether he had overheard the same, and, upon learning

that he had, asked the witness to remember it; and that plaintiff had afterwards spoken to the witness in regard to the conversation in question.

Mr. Kennard testified that he did not recall having had any such conversation.

Plaintiff further testified that after the conversation said to have occurred in February, 1910, plaintiff endeavored to see Mr. Kennard with reference to the execution of a written contract, and had several engagements with him, which the latter did not keep; that plaintiff went to Mr. Kennard's home on the evening before the latter left for his country home at Magnolia, Mass. On direct examination, plaintiff testified, as to this interview, that Mr. Kennard was quite ill, and that many people were present, saying further: "His son, John Burton, was there. We discussed my contract, but there was no way to draw it up, if I wanted it; I had to be satisfied with my verbal agreement." Whether by this plaintiff meant to say that he discussed the contract with Mr. Kennard or the latter's son is not clear. On cross-examination he said that he did not mention the contract to Mr. Kennard at this time, because the latter was a very sick man and nervous; that plaintiff saw him but a few minutes, when no stenographer was at hand, and could not well mention the matter.

Mr. Kennard remained away during the summer, and on June 18, of the same year, plaintiff wrote to him at Magnolia, Mass., as follows:

"Mr. S. M. Kennard,

Magnolia, Mass.

"My Dear Mr. Kennard:

"You know how little I have seen you to discuss the conditions of the fifth floor. I fully appreciated how your time was occupied before you left, but I felt it was my duty to have an interview with you on cer-

tain business, but I could not, under the conditions, ask you to discuss my personal affairs.

"Now that you have absolute rest, and as the matter is of so slight importance to you, I would remind you that you have never given me a written renewal of my contract, although you assured me verbally that the terms of my letter, dated November 5th, were accepted, and the same could be signed at any time. Will you kindly send me an acknowledgment to this effect? And under the terms of same, there is due me June 1st, $650. Will you request Mr. LeBerge to give me a check?

"I wrote you in my previous communication regarding my future with you, and, as it expresses my views fully, I beg to refer you to the same, copy of which I enclose. I want to feel closer allied to your company than is possible with a contract for one year, and I have been with you long enough for you to know whether or not you wish to renew our contract for a period of years, as was our former custom.

"Wishing you and your family a pleasant summer and one that may be in every way beneficial to your health, I beg to ask for an early reply and to remain,

"Very sincerely yours,

Spencer H. Gale,"


This letter was never answered, though plaintiff testified that Mr. Kennard's son said that he had been asked by letter to say to plaintiff that Mr. Kennard would answer plaintiff's letter as soon as a stenographer could be had. In August of the same year, plaintiff, being in Boston on a business trip, went to see Mr. Kennard at Magnolia, Mass. and had a brief interview with him respecting matters connected with plaintiff's department, during which no mention was made of the contract. During this summer other let-

ters were written by plaintiff to defendant's president respecting plaintiff's department, but making no further mention of the contract.

Plaintiff testified that after writing the letter of June 18, 1910, and waiting some time for an answer, he asked defendant's cashier if the latter had a check for him, and made the same inquiry later, but that the cashier had nothing for him.

Mr. Kennard returned to St. Louis in September or October, 1910, and, it seems, was at defendant's store nearly every day thereafter during the period here in question. Plaintiff saw him frequently, but made no further mention of his contract. Plaintiff, during the period mentioned in his petition, signed receipts for the weekly payments made him, each receipt stating that the amount so paid was "in full for salary to date." It appears that such receipts had been signed by plaintiff for the weekly payments made him during previous years. Plaintiff was discharged on April 30, 1911, having been given thirty days prior notice thereof. Upon quitting defendant's employ, he demanded the additional compensation claimed to be due him, which defendant declined to pay.

We have set out the facts in considerable detail, as such appears necessary to an understanding of the case made, and appellant's contentions with respect thereto; but the questions of law involved appear to be elementary. Indeed, there seems to be no room for serious controversy respecting the fundamental principles of the law of contracts applicable to the situation in hand.

Learned counsel for appellant insists that appellant's demurrer to the evidence should have been sustained. And in support of this contention it is urged that plaintiff's letter of November 5, 1909, upon which plaintiff's case rests, was so indefinite and uncertain as an offer that no contract would result from its acceptance. It is quite true that an offer must be com-

plete in itself, and reasonably certain and definite as to the terms of the proposed agreement, in order for its acceptance to create a valid contract. This is elementary, for if an offer is incomplete or so uncertain and indefinite as to leave essential terms of the proposed contract in doubt, though there be an acceptance thereof, there can be no meeting of the minds, and hence no binding contract. [See 9 Cyc. 248, 249; 1 Page on Contracts, Sec. 27; Elliott on Contracts, Sec. 27; Stone v. Union Trust Co., 150 Mo. App. 331, 130 S. W. 825.]

Numerous authorities might be cited on this question, but to do so is altogether unnecessary; for surely no one may dispute the correctness of the principle thus asserted by appellant. The only question in this connection is whether plaintiff's letter of November 5, 1909, is sufficiently complete and certain and definite, as an offer, that its acceptance by the defendant for a period of one year would constitute a binding contract between the parties, within the meaning of the principle to which we have referred above. Appellant's contention is, that it is insufficient for the reason that it makes no reference to the manner in which plaintiff's compensation is to be determined, as did the contracts previously had between plaintiff and defendant; that under the first contract between the parties plaintiff was to receive one-fourth of the net profits of the business of his department; that under the next contract he was to receive five per cent on all sales in his department in excess of one hundred thousand dollars; that under the contract for the next two years he was to receive five per cent commission on sales over and above the amount thereof required to pay the expenses of his department; and that under the contract for the following year, that preceding the one here in question, he was to receive twenty-five per cent of the net profits of his department; and that it is impossible to tell what was the basis proposed for

reckoning plaintiff's compensation for the year in dispute, in case it should exceed the amount claimed to be assured or guaranteed to him.

While it is quite true that plaintiff had worked for defendant under these several different contracts, we think that appellant's position is not tenable with respect to the matter under discussion. At the time that plaintiff's said letter was written, he had a contract with defendant whereby he was to be paid $6500, in weekly installments. He was to receive one-fourth of the net profits of his department, after deducting his salary and all other expenses, such other expenses to be arrived at in the manner provided in the contract for the preceding year. In case there were such net profits he was to share in them to the extent above mentioned, but was to receive in any event no less than $6500. His letter to defendant's president refers to his then existing contract, stating that it is about to expire, and saying: "Should you desire to *renew* it I trust you will appreciate the injustice—the impossibility—of my again accepting less guarantee than I have had in years past." From this it clearly appears that plaintiff directly referred to his contract then in force for the year which had then nearly expired. He spoke of renewing *it*, i. e., the contract under which he was then employed, but with one change or modification, viz., that he could not accept less "guarantee" than he had had "in years past." The word "guarantee" referred to the amount of plaintiff's assured compensation. It is quite clear that the parties did not use this term in the sense of a legal guaranty. The previous contracts had all provided for a certain minimum which plaintiff should in any event receive. Under the first contract, which was in force for more than four years, the amount of plaintiff's assured compensation was $3500, though he received much more. Under the contract for the next year it was $7800, defendant's president personally guaranteeing $600

thereof. And under the contracts for the next two years it was likewise $7800, defendant company agreeing to pay plaintiff at least that much per year. For the next year, immediately preceding that here in question, it was $6500. It thus quite clearly appears that plaintiff's letter was intended to constitute an offer to renew the existing contract, with its various terms and provisions, with the exception of the amount guaranteed him as compensation, and that as to the latter he was unwilling that it remain at $6500, as provided in the then existing contract, but insisted that it be the amount which he had received during the three previous years, viz., $7800. It is clear that plaintiff desired to enter into a contract for a longer period than one year; but, according to plaintiff's evidence, this did not meet with the approval of defendant's president, and the latter orally accepted plaintiff's proposition for one year. And plaintiff's evidence goes to show that he, plaintiff, acceded to this. It would thus appear that, if plaintiff's evidence be true with respect to these matters, then there was a meeting of the minds of the parties as to the terms of the contract.

In this connection it is also urged that the letter leaves the matter wholly in doubt as to what is meant by the language therein contained to the effect that plaintiff could not again accept a less "guarantee" than he had had "in years past," for the reason that "in years past" plaintiff's guaranteed compensation had varied under the different contracts. It is true that plaintiff had been guaranteed $3500 during the first period of more than four years, and $7800 during the next three years. Plaintiff, however, was, by this letter, complaining of the amount of his "guarantee" under the contract then in force, which was $6500, claiming that it was too small. And in his letter he could not have had reference to the "guarantee" of $3500 under the first contract, but to that of $7800

under the contracts for the three immediately preceding years. It seems quite clear therefore that there is no ambiguity or uncertainty in the letter with respect to this question.

It is also urged that the letter shows upon its face that it was but a preliminary step in negotiations intended to lead up to a formal proposal; that in the letter itself plaintiff refers to what is said as being his "suggestion;" and that in the letter of June 18, 1910, plaintiff refers to the former letter as expressing his "views." We think, however, that there is no merit in this contention, for, when taken as a whole, the letter in question appears to be sufficient as the basis of a contract, provided the minds of the parties met with respect to the subject-matter, as plaintiff's evidence tended to show.

It is true that it fully appears that plaintiff contemplated and desired that a written contract be prepared and executed; but, according to his evidence, defendant's president said that the written contract could be drawn up at any time. The fact that such written contract was not actually executed, but the preparation and signing thereof left to a future time, does not invalidate the contract entered into in the manner aforesaid; for it is well settled that where parties have agreed to the terms of a contract, the mere fact that reference is made to the future execution of a contract in writing does not negative the existence of a present contract. [See Concannon v. Mining etc., Co., 156 Mo. App. 79, 135 S. W. 988; Green v. Cole, 103 Mo. App. 70, 15 S. W. 317.]

It is also urged that even if the letter of November 5, 1909, was sufficient to constitute a contract when unqualifiedly accepted, the evidence shows only a qualified acceptance thereof, amounting to a rejection of the offer. As this argument proceeds, the letter proposed not only a change in plaintiff's "guarantee," but a closer alliance to the defendant's business, mean-

ing a contract for a period longer than one year; and hence the acceptance thereof "for one year" was a rejection of the offer as made. This does not appear to us to be sound, however, for the reason that plaintiff's evidence goes to show an acceptance of the offer, for a period of one year, to which plaintiff assented, asking that a written contract to that effect be prepared. While it is quite clear that plaintiff at that time, and even later, desired a contract for a period of years, his evidence tends to establish a meeting of the minds of the parties with respect to a contract for one year. And in so far as this was a departure from the terms of the offer contained in the letter, such departure became immaterial when assented to by both parties.

It is also urged that the undisputed facts show that the parties, by their conduct, construed the terms of plaintiff's employment to be the same as in the year preceding that involved in the first count of plaintiff's petition. But a careful examination of the record does not appear to bear this out. Plaintiff's evidence is to the effect that he not only wrote the letter on November 5, 1909, and had the conversations with defendant's president above related, but that he wrote the letter of June 18, 1910, while defendant's president was away, calling the latter's attention to the contract said to have been made the preceding February, and asking for some written acknowledgment to the effect that plaintiff's contract had been thus renewed. This letter also called attention to the fact that $650 was then due plaintiff under the terms of the contract claimed to have been made, requesting defendant's president to instruct its cashier to give plaintiff a check therefor. Though it seems that this letter was received by defendant's president, it was never answered. It would seem from this that the latter must have known that plaintiff regarded his contract of the previous year as having been renewed with

a larger "guarantee;" for otherwise plaintiff would have had no reason to request that a check be given him for additional compensation, over and above his weekly payments which constituted his full compensation during the preceding year.

It is true that plaintiff does not appear to have made demands upon defendant's president after the latter's return in September or October, 1910, or thereafter. However, plaintiff's year had nearly expired by the time of the return of defendant's president, and plaintiff says, in effect, that he assumed that the matter was fully understood and would be eventually cared for. It is also true that plaintiff executed the receipts above mentioned for the weekly payments made him, but it appears that this had been customary under all of his contracts when he received additional compensation, over and above his weekly payments. These were clearly matters for the jury.

It is also urged that the contract upon which plaintiff relies was in legal effect the snapping up of a bargain at a time when defendant's president did not have in mind the terms of plaintiff's letter, or anything else except the continuance of plaintiff in defendant's employ, and that the contract so attempted is void. But the evidence does not appear to support this view. Plaintiff had conferred with defendant's president, at the latter's home, with respect to this letter; and, according to his testimony, he had been told that the matter would be given consideration. Upon bringing up the subject later, he would have every reason to suppose that the terms of the letter were clear in the mind of the defendant's president. At any rate a jury would be warranted in so finding.

"Where a proposition sufficiently clear is submitted to another to act upon, and the person to whom the proposition is submitted makes such statements or does such acts with respect thereto as are sufficient to lead an ordinarily prudent person acting in good

faith to believe that the proposition has been accepted, and the proposer proceeds to the fulfillment of the conditions and terms imposed, a jury may find a contract from such conduct." [Northrup v. Colter, 150 Mo. App. l. c. 647, 131 S. W. 364. See also Embry v. Dry Goods Co., 127 Mo. App. 383; Brewington v. Mesker, 51 Mo. App. 348.]

We think it quite clear that the lower court committed no error in overruling appellant's demurrer to the evidence. Whatever there may have been in plaintiff's conduct inconsistent with the making of the contract in question, was for the jury to reckon with. It does fully appear that, prior to the expiration of plaintiff's last previous contract, he wrote the letter of November 5, 1909, making it clear that he would renew the existing contract, provided his "guarantee" was increased to what it had theretofore been. And he plainly stated that if this should not meet with the approval of defendant's president, it was better that plaintiff be at once apprised of it, in order that he might make a change then rather than later. This evidenced a clear intention not to remain in defendant's employ for the compensation he was then receiving. Defendant might have promptly dispensed with plaintiff's services, had it desired to do so. Such was not done, however, but, on the contrary, if plaintiff's evidence is to be believed, defendant thereafter contracted with plaintiff for such increased compensation for one year. Whatever conflict there may be in the testimony relative to the making of such contract was for the consideration of the jury, and their finding concludes the matter here.

It is also urged that the contract pleaded in the first count was for "salary," while the contract, if any, established by the evidence, was for a "guarantee;" and that there was hence a failure of proof as to the first count. But it is clear that, under plaintiff's various contracts with defendant, he was assured or guar-

anteed a certain compensation, in the nature of a salary, whether it was earned under these contracts or not. It was for the amount of this assured compensation that plaintiff sued in the first count of his petition; and we think that there was no failure of proof of cause of action pleaded. At most it was a mere variance of which defendant cannot now avail itself. [See Olive Street Bank of St. Louis v. G. M. Phillips, 179 Mo. App. 488, 162 S. W. 721; Fisher Co., etc., v. Realty Co., 159 Mo. 562, 62 S. W. 443; Rundelman v. Boiler Works Co., 178 Mo. App. 642, 161 S. W. 609.]

As to the second count in plaintiff's petition, it need only be said that upon finding that the contract above mentioned was entered into, for the year covered by the first count, and that plaintiff's previous contract did not continue in force, the jury were at liberty to find that plaintiff's services for the next five months, i. e., from December 1, 1910, to April 30, 1911, were reasonably worth $3250, being at the rate of $7800 per year. On behalf of plaintiff, there was evidence tending to show that such was the reasonable value of plaintiff's services, and the finding of the jury thereupon is conclusive upon us.

It is urged that error was committed in giving an instruction for plaintiff which told the jury that if they found from the evidence that plaintiff and defendant *entered into a contract* whereby plaintiff was employed, etc., then, finding the other facts mentioned in the instruction, their verdict should be for plaintiff. This instruction is assailed upon the ground that the court thereby submitted a question of law to the jury. But we need not dwell upon this, for the reason that the defendant offered an instruction in this precise form and is in no position to complain of the giving of plaintiff's said instruction.

The exclusion of certain letters written by plaintiff to defendant's president, which defendant offered in evidence, is also assigned as error. These were

evidently offered to show that plaintiff had communicated at such times with defendant's president with respect to other matters, as tending to negative the idea that plaintiff did not have ample opportunity to have the matter of his contract definitely determined. But we are unable to see any reversible error in the court's action in the premises. Defendant was permitted to show that such letters had been written at such times, which would appear to be sufficient for defendant's said purpose. The contents of the letters themselves, which are preserved in the record, appear not to be material or relevant to the issues here involved, and their exclusion could not be prejudicial error.

A careful examination of the entire record has convinced us that the case made was one for the jury, and that no reversible error intervened below. It follows that the judgment should be affirmed, and it is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.