### WEST, Plaintiff, v. ANKNEY, Defendant.

Common Pleas Court, Paulding County.

No. 18208. Decided February 10, 1956.

## OPINION

By DULL, J.

This is an action for a declaratory judgment construing a farm contract.

It was submitted to the court upon the pleadings, the testimony of witnesses, the evidence, exhibits, oral argument and briefs of counsel.

A copy of the contract, admitted in evidence as Plaintiff's Exhibit A, follows:

"CONTRACT

"I. This agreement is entered into the 1st day of April 1955, between Carl V. Ankney and Wm West.

"II. This agreement is entered into for the purpose of operating a farm business described as M. L. Searcey Farms Emerald Twp. Paulding Co., Ohio.

"III. The term of this agreement shall be from 1st day of April 1955 to 1st day of Jan 1956, an from. year to year thereafter unless written notice to terminate is given by either party at least 60 days prior to beginning of succeeding year.

"IV. The terms of this agreement shall be binding on the heirs, executors, administrators an assigns of Each Party in like manner as upon original Parties, except as shall be provided by mutual agreement to otherwise.

"V. This agreement shall not be construed as giving use to a pardnership, an Neither Party shall be liable for debts or obligations incurred by the other without written concent.

Under this agreement Wm West agrees to furnish his labor and Management. Annual settlement is made on cash basis an inventory.

"(A) Division of Net Farm Income. The net farm income at end of year shall be divided on a 50/50 basis of tenants share.

"(B) Wm West is guaranteed a cash income of $200.00 a month 4-1-55 to 1-1-56. Such compensation shall be considered advance payment against his share of net farm income at end of year.

"The amount advanced to Mr. West shall not be considered a part of the cost of hand labor when determining farm expenses.

"(C) Any extra hired labor shall be shared equally.

"(D) Each party is to share equally in all operating expenses of the farm, Any Major expense & sales beyond $25.00 must be agreed upon by both Parties.

"(E) Any Payments upon your share of live stock or Machinery may be deducted from Monthly income provided agreed upon mutually by both parties.

(Signed)   Carl V. Ankney<br>
(Signed)   W. A. West"

At the oral hearing held on December 15, 1955, from the testimony and evidence certain facts and surrounding circumstances were discovered.

"One of the most satisfactory tests for the ascertainment of the true meaning of a contract is for the court to place itself in the position of the contracting parties and view all the facts and circumstances surrounding them to determine what was meant by the phrases and words of the instrument." **11 O. Jur. 2d, page 406.**

"Preliminary negotiations may be considered for the purpose of explaining ambiguous language in a written contract. Conversation between the parties before, or at the time of, the making of a written

contract is admissible to show the sense in which ambiguous words were used therein." **11 O. Jur. 2d, page 409.**

"Subsequent transactions under or in pursuance of contracts, or with the contracts in view, may be looked to for the purpose of discerning the interpretation the parties have put upon doubtful provisions." **11 O. Jur. 2d, page 410.**

During the time of preliminary negotiations between the parties and when the contract was executed by the plaintiff and defendant, the defendant was—and still is—a tenant of a Mr. M. L. Searcey, the owner of the farm or farms in question. The defendant operated the farm or farms for Mr. Searcey, and each shared equally in the profits. The defendant and Mr. Searcey also owned the livestock in equal shares. Further, such operation evidently had been a successful one for a number of years. Hence, the defendant is the "tenant" referred to in Item V. The plaintiff is a tenant of a "tenant," and the plaintiff's share of any net farm income would be one half of the defendant's one-half or one-fourth of any total net farm income. The parties apparently agree on this point.

The defendant paid the plaintiff $200.00 for his services during the months of April, May and June of 1955. Then on or about August 11. 1955, the defendant stopped payment on a check for $200.00, Plaintiff's Exhibit B, in payment of plaintiff's services for July, 1955. On or about September 22, 1955, by written agreement of the parties, Plaintiff's Exhibit C, the plaintiff vacated the buildings on the farm or farms. By the terms of such agreement all of the rights and duties of the parties under the contract in question were preserved.

The major dispute between the parties revolves primarily around the interpretation of Item V, subsection (B) and secondarily around the interpretations of Item V, subsections (A), (C), (D), and (E) as such interpretations may have a bearing on the interpretation to be given to Item V, subsection (B).

"In construing any written instrument, the primary and paramount question is: what was the intent or purpose of the makers of such written instrument? The general rule is that contracts should be construed so as to give effect to the intention of the parties." **11 O. Jur. 2d, page 379.**

"In harmonizing apparently conflicting clauses of a contract they must be construed so as to give effect to the intention of the parties as gathered from the whole instrument, and where the object to be accomplished is declared in the instrument, the clause which contributes most essentially to that object will control." **11 O. Jur. 2d, page 381.**

"Contracts are to be construed according to the sense and meaning of the terms which the parties have used. Words in a written contract are to be interpreted according to their common, ordinary, and usual meaning." **11 O. Jur. 2d, page 383.**

In the first sentence of Item V, subsection (B), the plaintiff is "guaranteed a cash income of $200.00 a month 4-1-55 to 1-1-56."

According to Webster's New International Dictionary, Second Edition, 1950, a "guaranteed day or week" is "The guarantee of employment for a given period, and hence of wages for that period."

" 'Guaranty' or 'guarantee' do not always import guaranty contract, but may mean promise or agreement importing original obligation." Yankelewitch v. Beach, 2 P. (2d) 498, 499, 115 Cal. App. 629." Words & Phrases, Vol. 18, page 789.

" 'Guarantee' is a word frequently employed, in business transactions which do not provide for securing the promise or debt of another, to express an original primary obligation. The promise, in which the word appears is to be construed in the light of the evidence and as a whole. Border Nat. Bank of Eagle Pass, Tex., v. American Nat. Bank of San Francisco, Cal., C. C. A. Tex., 282 F. 73, 78." Words & Phrases, Vol. 18, page 790.

"Where, in several employment contracts, plaintiff was 'guaranteed' a specified compensation, the term 'guaranty' was used in the sense of assurance that his compensation earned should amount to a specified sum, and, plaintiff having sued for the amount of such assured compensation, there was no failure of proof because the contract pleaded was for 'salary' while that proved was for a 'guaranty'; such proof operating at most as a mere variance of which defendant could not avail itself. Gale v. J. Kennard & Sons Carpet Co., 165 S. W. 842, 848, 182 Mo. App. 498." Words & Phrases, Vol. 18, page 792.

There is little doubt, that by the use of the word "guaranteed" in the first sentence of Item V. subsection (B), the defendant is primarily liable to pay the plaintiff $200.00 per month for 9 months, 4-1-55 to 1-1-56. But has the defendant made himself liable to the plaintiff for $1800.00 if it is found at the end of the year that plaintiff's share of net farm income is less than that amount?

Further light upon the problem may be obtained by examining the word "income" as used in the instrument under study.

"The terms 'profit' and 'income' are often used interchangeably, and to a great extent have the same meaning. Selleck v. Hawley, 56 S. W. 2d 387, 331 Mo. 1038." Words & Phrases, Vol. 20, page 505.

In Item V, subsection (A), the words "net farm income" are used twice and in Item V, subsection (B), they are used once   Again, there can be little doubt even in the mind of a casual reader of the instrument, that the parties used these words to mean the profit from the operation of the farm or farms.

This view of the meaning of the words as used by the parties is given added weight by the appearance of the word "net" wherever the words "farm income" are described.

However, in Item V, subsection (B), the word "net" is not used, but the word "cash" is used to describe the words "$200.00 a month."

Again, according to Webster's New International Dictionary, Second Edition, 1950, the word "cash" is defined, "Money, especially ready money; strictly, coin or specie, but also, less strictly, bank notes, sight drafts, or demand deposits at a bank."

"Although 'profits' and 'income' are sometimes used synonymously, strictly speaking, 'income' means that which comes in, or is received from any business or investment of capital, without reference to the outgoing expenditures; while 'profits' generally mean the gain which is made upon any business or investment when both receipts and pay-

ments are taken into the account. First Trust Co. of St. Paul v Commonwealth Co., C. C. A. D., 98 F. 2d 27, 31." Words & Phrases, Vol. 20, page 505.

"It is undobutedly true that 'profits' and 'income' are sometimes used as synonymous terms; but, strictly speaking, 'income' means that which comes in or is received from any business or investment of capital, without reference to the outgoing expenditures, while 'profits' generally mean the gain which is made upon any business or investment when both receipts and payments are taken into account. 'Income' when applied to the affairs of individuals, expresses the same idea that 'revenue' does when applied to the affairs of a state or nation; and no one would think of denying that our government has any revenue, because for a stated period the expenditures may exceed the amount of the receipts. People v. Niagara County Sup'rs, N. Y., 4 Hill, 20." Words & Phrases, Vol. 20, page 506.

It is also noteworthy that the word "income" as used in Item V, subsection (E), is modified by the word "monthly" in the sentence which reads, "Any payments upon your share of live stock or Machinery may be deducted from Monthly income provided agreed upon mutually by both parties." Certainly, it would be difficult to agree to deduct payments from a "monthly income," if such income were subject to diminution or complete cancellation at the end of the year.

In the second sentence of Item V, subsection (B), it is provided "Such compensation shall be considered advance payment against his share of net farm income at end of year."

There is substantial authority to the effect that if the defendant had paid the plaintiff $200.00 a month for the duration of the contract or a total of $1800.00 and an accounting at the end of the year revealed that plaintiff's share of net farm income were less than that amount, the plaintiff would not have been liable for the difference to the defendant.

"Under a contract employing a general insurance agent providing for an allowance of general agency expenses by the company and of $3 for each $1,000 of business, against which the company would advance a specified sum each month, held that, though the advances were primarily payable out of earnings, if sufficient, they created no personal liability on the agent to make repayment to the extent that they exceeded earnings; 'advances' having a much broader signification than 'advancements,' requiring an examination of the context, with the aid of surrounding circumstances, to determine its exact meaning. Minnesota Mutual Life Ins. Co. v. Fraser, 222 P. 228, 230, 128 Wash. 171." Words & Phrases, Vol. 2A, page 116.

"Contracts to advance expenses to traveling salesman do not in absence of express stipulation impose upon him personal obligation to return sums advanced in event he is not earning enough in commissions to offset them; advance not implying loan in its strictly etymological significance. Richmond Dry Goods Co. v. Wilson, 141 S. E. 876, 877, 105 W. Va. 221, 57 A. L. R. 31." Words & Phrases, Vol. 2A, page 118.

"A contract of employment as a salesman at a certain commission, the employer to 'advance' the salesman a certain sum monthly, 'said ad-

vances to be charged and deducted from the commission computed at the end of the period of employment,' does not create a personal liability on the part of the salesman to repay advances in excess of commissions earned. Schlesinger v. Burland, 85 N. Y. S. 350, 351, 42 Misc. 206." Words & Phrases, Vol. 2A, page 120.

In **Barlett Lumber Co. v. Hammel, 20 Abs 667**, in **paragraph 1** of the syllabus and on page 680 of the opinion, it is stated:

"1. A promise contained in a letter to continue the employment of a salesman during 1932, not on a formal contract basis for the full year 'because we do not know what the next three or four months may bring forth,' but at a guaranteed monthly salary with 40% of net profits exceeding the guaranteed salary and credit for 1931 unfilled orders, may be enforced, where the employment is discontinued after May 1st, for 40% of net profits exceeding the minimum salary up to that time including the 1931 unfilled orders, in the absence of a condition in the letter that the salesman be employed for a full year before becoming entitled to a portion of the net profits. See **9 O. Jur., Contract, pg 479, Paragraph 241.**"

"It is the duty of the court to construe the writing. It seems to us that the defendant reserved the right to terminate the employment at any time, but that it was obligated to pay the guaranteed minimum during the continuance of the employment, and in the event forty per cent of the net profits on the orders received during the employment and on the unfilled orders of 1931 exceeded the amount of the guaranteed minimum paid the plaintiff, the defendant was obliged to pay that excess."

In the spirit of fair play and to save the time of counsel in looking up the citation, in the letter referred to and which the court viewed as forming part of the agreement of the parties it was stated that the salesman was to have a monthly drawing account, which he would receive regardless of whether his portion of the profits equalled that amount or not. This monthly drawing account was a guaranteed minimum.

Counsel in their briefs attach great weight to the wording of the last sentence of subsection (B), Item V, and subsection (C), Item V. But in the scales of the court, these provisions weigh very little.

The last sentence of subsection (B), Item V, reads as follows:

"The amount advanced to Mr. West shall not be considered a part of the cost of hand labor when determining farm expenses." Subsection (C), Item V, reads as follows: "Any extra hired labor shall be shared equally."

By virtue of the first sentence of the second paragraph of Item V, the plaintiff was under obligation to furnish his own labor and management. In subsection (C), Item V, the parties agreed that the cost of any labor other than that of the plaintiff was to be shared equally as part of the cost of operation. This is an extremely clear statement. Then call it what one will "guaranteed—cash income of $200.00 a month," "advance payment" or "amount advanced," by the last sentence of subsection (B), Item V, the parties agreed that such "guaranteed—cash income of $200.00 a month," "advance payment" or "amount advanced"

was not to be taken into consideration in determining the cost of any extra labor in arriving at the cost of operation. In subsection (D), Item V, the parties agreed to share equally all operating expenses in another extremely clear statement.

Further, "A fundamental and frequently applied general rule of construction is that if there is doubt or ambiguity in the language of a contract the document is to be construed strictly against the pary who prepared it or selected its language and in favor of the party who took no part in its preparation or in the selection of its language. He who speaks should speak plainly or the other party may explain to his own advantage." **11 O. Jur. 2d, page 391.**

"Ambiguous language in a contract written on a printed form prepared by one of the parties is to be construed most favorably to the other party." **11 O. Jur. 2d, pages 392** and **393.** See also **The Farmers National Bank v. The Delaware Insurance Company, 83 Oh St 309, O'Neill v. German, 154 Oh St 565 at page 571** of the Opinion.

The defendant freely admitted not only drawing the contract in his own handwriting but that it was copied, in part at least, from a form book.

At the oral hearing, the defendant testified that according to his understanding of Item V, subsection (B), the "guaranteed—cash income of $200.00 a month" was only an advancement on the plaintiff's share of "net farm income." That if there were no profits, then the defendant would owe him money.

At the oral hearing, the plaintiff testified that according to his understanding of Item V, subsection (B), the "guaranteed—cash income of $200.00 a month" meant a guaranteed minimum of $200.00 a month; that if there were no profits, he was to keep the $200.00 a month.

The defendant is a man of mature years, a successful businessman and farmer with 17 years of farming experience.

The plaintiff is a young man in his twenties, a former corporation wage-earner and with no business experience.

A minor dispute between the parties centers about the question of whether or not the natural increase of livestock shall be taken into account in determining any net farm income at the end of the year.

"In the absence of any agreement to the contrary, the offspring or increase of tame and domestic animals belongs to the owner of the dam or mother, and it appears that the rule is applicable to tamed or reclaimed wild animals. In this respect the common law follows the civil law and is founded on the maxim 'partus sequitur ventrem,' which principle, according to Puffendorf, is based not alone on the fact that the male is frequently unknown, but also upon the circumstances that the dam, during the time of her pregnancy, is almost useless to the proprietor, and must be maintained with greater expense and care, wherefore he ought to be the gainer by her brood." **2 O. Jur. 2d, page 398;** 2 Am Jur., pages 703 and 704. See also Kellogg v. Lovely, 46 Mich. 131, 8 NW 699, 41 Am. Rep. 151.

It was admitted by the parties that at the time the contract was executed and the operation began the livestock was owned by the defendant and Mr. Searcey.

By the provisions of Item V, subsection (E), the plaintiff was given the opportunity of buying a share of the livestock  Again, it was admitted that the plaintiff did not buy any share of the livestock.

Hence, the plaintiff not being an owner of any share of the livestock, he is not entitled to any of the natural increase. And, therefore, the natural increase of the livestock shall not be taken into consideration in determining any net farm income at the end of the year.

Finally, it is the sincere opinion of the court, that neither of the parties contemplated a loss in the farm operation. At the oral hearing the defendant spoke of profits made in the past and the plaintiff of estimated profits for the period covered by the farm contract. But losses do occur in business ventures no matter how roseate the prospects may appear. They should be expressly provided for. When they are not, then it becomes an extremely difficult task to determine how the parties intended to provide for them. This the court has tried to do. It has been quite a chore in the field of etymology. For, as it is so well put by Mr. Adams in his THE EDUCATION OF HENRY ADAMS, "No one means all he says, and yet very few say all they mean, for words are slippery and thought is viscous."

In the light of the foregoing authorities and the application of a combined measure of logic and common sense, it is the opinion and judgment of the court and it is so ordered, adjudged and decreed:

That the defendant by the words used in the contract, especially those contained in Item V, subsection (B), has made himself liable to the plaintiff for 9 monthly payments of $200.00 each or a total of $1800.00, even if an accounting at the end of the year reveals that plaintiff's share of the "net farm income" is less than that amount. Of course, if such accounting reveals that plaintiff's share is more than $1800.00 then the $1800.00 shall be deductible from plaintiff's share.

That the natural increase of the livestock shall not be taken into consideration in determining any net farm income at the end of the year.

The plaintiff shall pay one-half of the costs and the defendant shall pay one-half of the costs.

The counsel for the plaintiff may draw a journal entry accordingly.