GARTSIDE et al., *Appellants*, v. GARTSIDE.

Division Two, December 31, 1892.

113    348
e98a  3694

1. **Trustee:** BOND: STATUTE. A trustee appointed to hold, manage or dispose of property belonging to another, may, under Revised Statutes, 1889, section 8685, be required to give bond for the faithful discharge of his trust.

2. ——: ——: ——. Such requirement may be enforced against a mere naked trustee, with no power to sell the property or to receive its rents and income.

3. **Trustee:** REMOVAL OF: EQUITY. Where the position of the trustee is antagonistic to the trust property because of his personal interest therein, and his relations to the *cestui que trust* are unfriendly and hostile, equity will decree his removal.

4. **Equity:** PARTIES. All having a common cause of action and a common ground of relief should be joined in the same bill.

*Appeal from St. Louis City Circuit Court,*—HON. J. E. WITHROW, Judge.

REVERSED AND REMANDED.

*D. T. Jewett* for appellants.

(1) Plaintiffs say that in view of all the facts disclosed by the evidence the defendant has grossly violated his duty as trusteee, because he has sold a large amount of real estate in his hands as trustee, without any authority under the will, or authority under a decree of a court, and expressly against the wishes of the *cestui que trusts*, and in violation of the law applicable to trust property. 2 Story's Eq. Jur. secs. 978, 1276, 1289; Perry on Trusts, sec. 764; *Gamble v. Gibson,* 59 Mo. 595. These authorities are all to the point, that a trustee has no authority, unless authorized by the instrument creating the trust or by a court of equity, to sell real estate, unless the *cestui que trusts* are all of age and consent. (2) The trustee has violated the terms of the will and his duty as trustee, and ought to be removed. 2 Story on Equity, secs. 1287, 1288.

*Fisse & Allen* for respondent.

(1) There are two classes of trust estates created under the will of the testator, as to which the petition

may apply, although it does not discriminate between them, or particularly recognize either of them. The first is the general trust—that comprehended his whole estate. The second includes the particular estates created in the partition of the general estate. (2) The motion, if designed to accomplish the removal of the defendant as trustee of the general estate, or to require him to give bond for the safe preservation of the same, must fail, because that trust estate has been determined by the partition made by defendant and his co-trustee, pursuant to the directions of the will. (3) The motion must likewise fail if intended to apply to the particular estates created in the partition of the general trust estate, for, as to the property included in these particular trusts, the defendant has resigned all control to the plaintiffs, and retains only a bare title to prevent acquisition of title by any one as tenant by the curtesy. When possession of property is rightfully given up, actual control of the property ceases; responsibility for it also ceases. Under such circumstances a bond ought not to be exacted. (4) The petition is one which addresses itself to the discretion of the chancellor, and his decree in disposing of it will not be reviewed, except to ascertain if the discretion was abused. In the case at bar, it can not be affirmed that the circuit judge has been guilty of such wrong conduct against these plaintiffs. The judgment ought to be affirmed.

THOMAS, J.—This is a bill to remove defendant from the position of trustee of the property of three of the plaintiffs, Emma and Julia Gartside and Mrs. Matty Duffy, or to compel him to give bond for the faithful discharge of his duties. After a hearing the court dismissed the bill and plaintiffs appealed.

The undisputed facts are about these: Joseph Gartside, father of the lady plaintiffs and of defendant, died

December, 1876, leaving a large estate of $700,000 or
$800,000.   By his will he appointed the defendant and
one Joseph W. Branch his executors *and trustees*, plac-
ing all the property which he gave to his four daughters
in the hands of his said son and said Branch as trustees.
He left one other daughter besides plaintiffs (married
at the time of his death), and one other son besides
defendant, six children in all.   The will does not say
whether the trustees *shall or shall not give bonds*.   They
never gave any bonds as trustees.   The defendant,
Charles E. Gartside, declined to act as executor, and
Branch alone gave bond and was sole executor.

The estate left by the father consisted of consider-
able real estate in the city of St. Louis, and a large
mining property in the state of Illinois.   The coal
mines in Illinois were owned by a stock company,
organized under the laws of Illinois and were valued
at $600,000, the deceased owning all the shares except
a few given to each of his sons so they could be
members of the company.   The shares were each $100.
The will provided that the widow should have the
use of the dwelling house in St. Louis during her life,
and an annuity of $5,000 a year; that each of the
daughters, after they became of age, should have $1,000
a year, to be paid them yearly and to be finally charged
to them in the distribution of the estate; that, when
the youngest daughter became of age, *then* the estate
should be equally divided among the children, after
reserving enough to pay the widow's annuity.   But
the shares of the four daughters were still to remain in
the hands of the trustees, so that no husband could
ever get control of it.   The youngest daughter became
of age (18) in August, 1882.

In 1882 Branch turned over to himself and defend-
ant, as trustees aforesaid, about $500,000 worth of
stock of the coal company and got credit for $25,000

commission thereon.    It seems, however, that the debts had not been paid, and he continued in charge of the estate as executor till 1887, when upon final settlement had with him he was found to be short in his accounts in the sum of $14,000, which his sureties afterwards paid.    About this time he resigned as trustee, leaving defendant sole trustee.    Defendant paid to Branch, as executor, the whole income of the estate coming into his hand from 1882 to 1887, for the purpose, as he alleges, of enabling him to pay the debts.    The trustees did not pay to the daughters the $1,000 per annum each, as provided by the will, on the ground, as they claim, that they had nothing to pay with.    In 1887 a disagreement sprung up between defendant and the beneficiaries, and this went to such an extent that all social intercourse between them ceased.    Defendant while admitting a hostile feeling between him and his sisters, claims that it grew out of the interference of Mrs. Duffy's husband.    Be that as it may, it is evident the family is divided into two extremely hostile factions, the mother, one sister and a brother constituting one faction under the leadership of defendant, and the other three sisters constituting the other faction under the leadership of Joseph A. Duffy, the husband of one of them.

After some litigation and a good deal of negotiation, partition of the estate as provided in the will was made in 1889, and deeds were duly executed conveying to defendant, as trustee, the real and personal estate allotted to the four sisters in severalty.    In this partition the sisters obtained the annuities due them under the will, payment of which had not till then been made, and at the same time an agreement was entered into between all the parties by which it was stipulated that the sisters should receive the rents and income of their estate without molestation from the trustee, and

so far as the real estate in the city is concerned there seems to be no trouble but the defendant has in possession the shares of the stock of the Illinois Coal Company belonging to his beneficiaries, each having about six hundred and sixty shares. Defendant is president and treasurer of the company, and he is enabled, without the consent of plaintiffs, to control the election of the board of directors, as he, his mother, his sister that sides with him, and his brother own four thousand and twenty of the shares, while plaintiffs own one thousand nine hundred and eighty. He pays the dividends on the stock to his sisters. After the institution of this suit defendant did not vote the stock of the plaintiffs, although the by-laws of the company authorized him as trustee to vote it, and it seems that after that time their stock was not voted. He refuses to give his sisters any information in regard to the business of the coal company. The company sold lands in Illinois for $337,000, $265,000 of which defendant invested in bonds of counties in Missouri other than the city and county of St. Louis, which bonds are in the custody of the officers of the company, the will providing that all surplus funds of the estate should be invested in real estate, in United States bonds, or bonds issued by the state of Missouri and the county and city of St. Louis.

I. The court erred in not requiring defendant to give bond for the faithful discharge of his duties as trustee. Section 8685, Revised Statutes, 1889, provides that every trustee appointed by any last will, deed or other instrument of writing to hold, manage or dispose of any property for the use of another person may be required by the circuit court to give bond, "conditioned for the faithful execution of the trust," unless the will or other instrument creating the trust shall in express terms dispense with security. We may presume,

though it does not specifically appear in the record, that the court refused to require a bond of defendant on the ground, that under the agreement of all parties, entered into at the time of the partition of the estate, defendant became a naked trustee with no power to sell the property or receive the rents and income thereof. But the statute even contemplates that such a trustee may be required to give bond, for its provisions extend to a trustee who *holds* property for another. We think he ought to be required to give bond under the statute, the will not having expressly dispensed with security.

II. We think also that the court erred in not removing defendant from the trust for these reasons: *First.* He occupies antagonistic relations to the coal company property. He owns stock as an individual, as trustee, he holds the stock of his sisters, and he controls the business of the company as *its* president. He is, indeed, the company, being in full and complete control of it. He elects himself president and treasurer, and fixes and pays his own salary. He claims and exercises the power to sell the property of the company and invest the proceeds according to his judgment, without regard to the provisions of the will. The plaintiffs insist that the will prohibits him from selling the coal lands in Illinois and investing the proceeds except in real estate, United States bonds or bonds issued by the state of Missouri or by the county or city of St. Louis, and to this he replies that the lands and proceeds of the sale of the lands belong to the company, as such, that the stock of the company only belongs to the estate, and that he has not sold the latter or any part of it.

In view of the situation of affairs this is rather a fine distinction he makes. The stock of this company consists of six thousand shares and it is *all held by the children and widow of the testator,* except one share

which is owned by Mr. Hamilton in order that he may be secretary. Defendant, as has been said, is in absolute control of the company, can change its by-laws or sell its property at will. Though he may not sell the stock he has the power to destroy its value by disposing of the property which constitutes the basis of its value. He has in his custody $265,000 in bonds, which he claims belongs to the company and for which he is responsible alone to the company. No one disputes that he can negotiate these bonds in the market, but he denies that his beneficiaries can call him to account either for the sale or the proceeds; that all they can do is to call him to account for their stock and the dividends on it. But what avail would this right be to them if he has the power to render the stock worthless by the disposition of the property on which alone its value rests? It is true he claims he has not disposed of any of the corporate property, except by the consent and with the approval of those interested, but we now speak of the power he claims to have, and which he probably does have to sell the property without that consent and approval if he so desires, at least without the consent of plaintiffs who, it is urged, cannot interfere with his management of the company's business for the reason that he controls four thousand and twenty out of six thousand shares of the stock. Defendant's attorneys make this distinction with great clearness between defendant's actions as *an officer of the company* and his conduct as *trustee* and complain that plaintiffs cannot or will not see that distinction.

The argument is that the beneficiaries have no right to inquire into defendant's management of the corporate property, and that, even if they had such right, it is evident "they together represent too small a fraction of its stock to enable them to exercise control of the business and it is a sufficient answer to all their

complaint and criticism that all that has been done represents the will of the majority of those interested in the company." If that is true, then it is perfectly manifest that the stock of the complaining beneficiaries should be held by some one other than the defendant. This would operate as a slight check, at least, on his management of the company's affairs. The fact that he can control the company without the consent of complainants, instead of being a reason for permitting him to retain the title to their stock with the power to vote it, affords the strongest reason why he should surrender it to someone whose interests are not identical with his. His dual relations to this property are antagonistic, and the court should sever them by removing him from the trusteeship, and by the appointment of some other discreet, business man, who, no doubt, will be able to find some legal method of inquiring into the management of the business of the company.

*Second.* The second reason why the defendant should be removed from the trusteeship mentioned is the unfriendly and even hostile relations that exist between him and the *cestui que trusts*. Hostility between the trustee and the *cestui que trust* is not of itself a sufficient ground of removal, unless it appears that the action of the former is probably controlled or might be controlled by it. Some of the courts make a distinction between hostility growing out of the trustee's fault, or partly out of his fault, and that growing wholly out of the fault of the *cestui que trust*. Conceding that such distinction is founded in reason, which is not clear to us, however, yet we think the evidence in this case shows conclusively that defendant is not entirely without fault.

The answer alleges that "it is true that, through the machinations and misconduct of plaintiffs, and especi-

ally of the plaintiff, Joseph A. Duffy, the personal rela-
tions between the plaintiffs and this defendant have
become unpleasant and distrustful, that is to say, this
defendant admits that said plaintiffs have rendered
themselves unpleasant to him.'' Defendant then avers
that this has not affected his action as trustee. The
misconduct of Duffy seems to have been what defend-
ant calls an interference in the business of the estate.
Having married one of the devisees, he has a right to
interfere in the management of his wife's business.
This interference, of course, should have been con-
ducted along business lines, and there is nothing in this
record to show that it was conducted otherwise. The
evidence on the part of complainants tended to show
that defendant caused the trouble, and at one time
offered personal violence to one of his sisters by slap-
ping her, for which he was arrested, taken before the
police court of the city and fined. We think also the
evidence of defendant tended to show his hostile feeling
and in an especial manner, does it show an utter indif-
ference on his part to the interests of his sisters. He
says in his answer, and he swears to it, too, that he
pays no attention whatever to their property, leaving
its management wholly to them, and while he has a
right to vote their stock, he refuses to exercise that
right, leaving that stock unvoted. The title, however,
to all the property, both real and personal, is in him,
and no lease or sale can be made without his assent, and
hence he must constantly be brought into personal busi-
ness relations with his beneficiaries. If, as he claims, he
exercises and desires to exercise no control over their
property, why does he insist on continuing a relation
that is unpleasant to him? And, on the other hand, if it
is his duty to exercise some control over the property,
and its management, why does he refuse to perform
that duty? It is apparent, though, that he not only

has the power, but that he exercises the power in some degree over the management of the property, and affects its incomes, and especially is this the case with the stock of the coal company, which constitutes a very valuable part of the estate.

In our opinion the hostility of these parties and the situation and nature of the property and their relations to it make the continuance of defendant as trustee incompatible with the best interests of the beneficiaries, and he should be removed. This position is supported by authority and, it seems to us, upon principle, too. Perry on Trusts, sec. 276, and cases cited. Having concluded that for the reasons given defendant ought to be removed from this trust we will not examine other grounds urged for his removal by complainants, such as his violation of the provisions of the will in the sale of property and the investment of the proceeds thereof, his failure to pay the annuities due his sisters from 1882 to 1889, his refusal to permit an accountant to be appointed by complainants to examine his accounts, and by compelling them to hire a lawyer to ascertain the state of their property, its management and income, and to commence legal proceedings for a partition of the estate under the will.

III. We do not concur in defendant's contention that plaintiff's petition is multifarious in joining therein three beneficiaries, each owning estates in severalty. Plaintiffs have a common object, the removal of defendant from the trust, and common ground upon which they seek that object. Defendant is trustee of the property of all of them, his conduct towards them and their property and his relations with them are the same. All having a common cause of action and common ground of relief may be joined in the same bill. *Michael v. St. Louis*, 112 Mo. 610

The judgment will be reversed and the cause

remanded with directions to the circuit court to remove defendant from the trusteeship of complainants, and to appoint some other discreet person in his stead, requiring the new appointee to give bond in a reasonable sum, having respect to the property and the trustee's control over it under the will, "conditioned for the faithful discharge of the trust." All concur.