BESSIE KING SELLECK and ELLROY V. SELLECK, Appellants, v. NELSON J. HAWLEY, HARRY L. KING, ALBE W. KING, HENRIETTA RENICK and MARK RENICK.—56 S. W. (2d) 387.

Division Two, December 31, 1932.

*Charles M. Hay* and *Ellroy V. Selleck* for appellants.

*James T. Blair, Jr., H. A. Loevy* and *Matt. J. Scherer* for respond-ents.

WESTHUES, C.—On the tenth day of February, 1928, appellants, plaintiffs below, filed their fifth amended petition in this case in the Circuit Court of the City of St. Louis, Missouri. Respondents, defendants below, filed a demurrer, which the court sustained. Plaintiffs declined to plead further. Judgment was rendered against plaintiffs and they appealed. The petition covers seventy-nine printed pages of the abstract of the record and the demurrer thirty-six pages.

The question presented is the sufficiency of the petition. In order to properly understand the issues raised by the pleadings, it will be necessary to make, if possible, a short, concise statement of the facts alleged in the petition. We will undertake to do this by first giving a general outline of the parties and their relation to each other with reference to the subject matter in this suit. We will then attempt

1044

to classify the various charges of the petition and dispose of them accordingly.

We learn from the petition that the controversy in this case arose out of the last will and testament of Henry King, who departed this life in March, 1915. The wife of Henry King and a son preceded him in death. There survived one son, named Henry L. King, and two grandsons, Albe W. King and Harry L. King. The petition alleges that Henry King contracted with the mother of plaintiff, Bessie King Selleck, when the named plaintiff was three years old, to adopt plaintiff as his, Henry King's own child and daughter. Later Bessie King Selleck married Nelson J. Hawley to which union a daughter was born, named Henrietta, who intermarried with one mark Renick and was named as a defendant under the name of Henrietta Renick. Plaintiff, Bessie King Selleck, was divorced from Nelson J. Hawley and later intermarried one Ellroy V. Selleck, the other plaintiff in the case. Plaintiffs in this case are Bessie King (Hawley) Selleck, the alleged adopted daughter of the testator, Henry King, and her present husband, Ellroy V. Selleck. The defendants are Nelson J. Hawley, the first husband of plaintiff, Bessie King Selleck; Harry L. King and Albe W. King, grandsons of the testator, Henry King; Henrietta (Hawley) Renick, daughter of plaintiff, Bessie King Selleck and defendant, Nelson J. Hawley; and Mark Renick, husband of Henrietta (Hawley) Renick. Henry L. King, mentioned in the will, was the son of the testator and the father of Albe W. King and Harry L. King. Henry L. King died in July, 1926. Max Kotany was named as a trustee in the will, but refused to act. The circuit court appointed Harry L. King as a trustee, on March 15, 1917, in lieu of Kotany. James L. King and Nelson J. Hawley accepted the trusteeship. James L. King died on November 22, 1919, and Nelson J. Hawley and Harry L. King, claiming to act under the will, appointed, over the protest of plaintiff, Albe W. King as a trustee in place of James L. King. The acting trustee, at the time the amended petition was filed, were: Nelson J. Hawley, the first husband of plaintiff, Bessie King Selleck; Harry L. King and Albe W. King, the two grandsons of the testator. These two grandsons are remaindermen under the will of Henry King. No bond was given by any of the trustees named. When speaking of plaintiff in the opinion we will have reference to Bessie King Selleck only.

The will of Henry King is copied in full in the petition. It is very lengthy and it will serve no good purpose to copy it in full in this opinion. The parts we deem pertinent to the issues will be quoted and read as follows:

"Article III. I give and bequeath $1.00 to my son Henry L. King and $1.00 to Mrs. Bessie King Hawley, who lived with me and my

wife during the latter's lifetime as our daughter and in whose home I have lived since my wife's death, although she was never adopted by either of us as a daughter in accordance with the law.

"Article IV. The rest, residue and remainder of my estate, real, personal and mixed, I give, bequeath and devise to James L. King of Topeka, Kansas, Dr. Nelson J. Hawley and Max Kotany, the two latter both of St. Louis, as Trustees and to their successors in trust and not otherwise in trust for the use and benefit of my said grandsons Albe W. King and Harry L. King and of Henryetta Hawley (daughter of said Mrs. Bessie King Hawley), share and share alike, upon and only upon the following terms and conditions:

"Said Trustees are to have the absolute control of and power to sell said property, if necessary, and are to manage and dispose of the same in their discretion, subject only to the provisions hereof, but only by and upon concurrence of all three therein. . . .

"Said Trustees shall semiannually render to the beneficiaries of said trust a written statement and report of the transactions of the trust estate and fund during the then preceding half year. Said Trustees are, if they claim it, to be allowed jointly compensation for their services in the management of the trust not exceeding five (5%) per cent of the income of the trust estate and fund, to be paid out of the income, and not exceeding five (5%) per cent on the conveyance, transfer and delivery of the trust estate, to be deducted from the principal.

"The said Trustees are authorized to incur the usual and customary expenses for management of property, shall keep a true, correct and faithful account of all money received and disbursed by them as such and shall keep a true, correct and faithful book account, and (with) vouchers for disbursements, which shall be open and subject to inspection by the beneficiaries herein or their agents or attorneys during usual business hours with the right and power on their part to take copies thereof.

"Article V. I further direct and provide that upon the death of either of my said grandsons or said Henryetta Hawley, before the probate hereof, his or her share of my estate *to which he or she would otherwise have hereby become entitled* shall pass to and vest in and become the property of the survivors of them in equal shares and if any two of them shall have died before the probate hereof, the same shall pass to and vest in and become the property of the sole survivor of them, but nevertheless and in either event, the payment to my son and his wife Mary W. King as herein provided, shall be made and the net income of one-third of my estate shall be paid to said Mrs. Bessie King Hawley as herein provided. In other words, the death of either my said grandsons or said Henryetta Hawley, shall not

affect or cancel the bequests herein made to my said son and to said Bessie King Hawley and to Mrs. Mary W. King, wife of my said son, if they are living at the time of the probate hereof.

"Article VI. I direct and provide that out of the net income from the property and estate herein and hereby given and bequeathed to my said grandsons and to said Henryetta Hawley, said Trustees shall reserve for and pay annually to my son Henry L. King, if living at the date of the probate hereof, the sum of six hundred ($600) dollars per annum, during his lifetime. Two hundred ($200) dollars of which legacy shall be charged to each of them (my said grandsons and said Henryetta Hawley). Same is hereby declared to be a charge and lien on all their said shares during his lifetime. Upon his death all such payments shall cease and this bequest shall be thenceforth null and void.

"I direct and provide that out of the net income from the property and estate herein and hereby given and bequeathed to my said grandsons, said Trustees shall reserve for and pay to Mrs. Mary W. King, wife of my son Henry L. King, the sum of nine hundred sixty ($960) dollars per annum during her lifetime, semi-annually, if possible, one-half of which legacy shall be charged to each of them my said grandsons. Upon her death all such payments shall cease and this bequest shall be thenceforth null and void. Said legacy is hereby declared a charge and lien on their said shares during her lifetime.

"I further direct and provide that the entire net income and profit of the one-third share of my estate hereby given and bequeathed to said Henryetta Hawley shall be paid by the Trustees herein named to her said mother, Mrs. Bessie King Hawley, if living at the time of probate hereof, during the lifetime of the latter less one-third of said six hundred ($600) dollars (namely), the sum of two hundred ($200) dollars, which is payable as hereinbefore provided to my said son Henry L. King. Same is hereby declared to be a charge and lien on her said share during the lifetime of her, said Bessie King Hawley. . . .

"Article IX. Should any of said Trustees die before the probate hereof or the expiration of said Trusteeship, the survivors or survivor of them, shall, in writing appoint a successor trustee or trustees who shall be and become successor or successors forthwith to and of the title to said trust estate hereby vested in the deceased trustee or trustees or his or their successors, so that there shall always be three trustees of the trust hereby created. . . .

"Article XI. The trust herein created shall continue during the lives of my said son and of said Mary W. King and of said Bessie King Hawley, but if all of them shall have died before the probate hereof, then it shall not come into existence at all and all the pro-

visions herein contained concerning same are and shall be ineffective and void, and my estate shall at once be distributed in accordance with the laws of the State of Missouri.

"Article XII. I nominate and appoint my said grandsons Albe W. King and Harry L. King and Mrs. Bessie King Hawley, executors and executrix respectively of this my last will and testament, with request that they as such and that said James L. King, Dr. Nelson J. Hawley and Max Kotany as Trustees hereunder, be not required to give bond. But this waiver of bond shall not apply to any other person or persons."

The petition then charges that plaintiff was bequeathed one-third of the net income and profit of the trust estate; that plaintiff was entitled to the net income and profit from the date of the death of the testator, March 15, 1915. The estate was finally closed on the fourth day of April, 1917. Plaintiff alleges that during the period of administration there was a net income and profit of over $30,000, and claims she was entitled to one-third of this amount. Plaintiff alleges that Harry L. King and Albe W. King, as executors, and the trustees have refused to pay to her any part of the net income and profit that accumulated during the period of administration; that the trustees knew that the executors were withholding more than ten thousand dollars from plaintiff; that the trustees wrongfully and with intent to cheat, wrong and defraud her failed and refused to file exceptions, as her trustees, to the final settlement made by the executors. The petition charges that the executors wrongfully paid to the State of Missouri the sum of $1,975.20, as an alleged inheritance or stock transfer tax; that $236.28 was so wrongfully paid, by the trustees, to the State of New Jersey and in like manner the sum of $161.38 was paid to the State of Minnesota. The applicable statutes and laws of New Jersey and Minnesota are pleaded in the petition. The basis of plaintiff's contention, that these alleged inheritance taxes were wrongfully paid, was that the laws of these three named states did not require the payment of an inheritance or stock transfer tax in case the property was inherited by a child and that for all intents and purposes plaintiff, Bessie King Selleck, was the adopted child of the testator and, therefore, exempt from the tax. Plaintiffs also plead that the amount of the tax was charged to her and deducted from her income, when in fact it should not have been paid out of her portion of the income.

Quoting from plaintiff's petition it further alleges:

"13. Plaintiffs further state that since the creation of said trust estate, there have been declared out of the net profits, earned by three different corporations hereinafter mentioned, after the creation of said trust estate on the 15th day of March, 1915, upon eight differ-

ent occasions, stock dividends upon certain stock held by the trustees of said trust estate as hereinafter set out, that all of said stock dividends, representing net profits of said three corporations, have come under the control and supervision of Nelson J. Hawley, Harry L. King and Albe W. King, whilst acting as such trustees of said trust estate, created by the will of the said Henry King, deceased; that said stock dividends were declared by corporations organized and existing by virtue of the laws of the States of New Jersey, New York and Pennsylvania; that by the statute laws of said states, all corporations existing by virtue of said laws, can declare dividends only from its surplus or out of the net profits and earnings of said corporations.

"14. Plaintiffs state that, in so far as same is material to the issues in this case, the laws of the State of New Jersey relative to corporations declaring dividends referred to above, and which were in full force and effect at the times the stock dividends of the R. J. Reynolds Tobacco Company, hereinafter referred to, were declared, provide as follows:"

The petition then recites in full the statutes of New Jersey, New York and Pennsylvania with reference to stock dividends. The petition then proceeds:

"Plaintiffs further state that said stock dividends, declared by said corporations aforesaid, are hereby designated as follows:

"Stock Dividend No. 1. Being a stock dividend of 200 per cent declared August 16, 1920, upon 272 shares of stock of the R. J. Reynolds Tobacco Company, incorporated under the aforesaid laws of the State of New Jersey, held by said trustees at said time, and representing a portion of the net profits, earned by it after the creation of said trust estate, said shares of stock being of the par value of $25 per share; that 136 of said 272 shares were held by Henry King at the time of his death on March 15, 1915, which consisted originally of 34 shares of the par value of $100 each, but which shares, sometime after the creation of said trust estate had been converted into 136 shares of the par value of $25 each; that 136 shares were purchased at par by the trustees for $3,400 during the year 1918; that said stock dividend represented a portion of the net profits of the R. J. Reynolds Tobacco Company, earned upon, and declared upon said 272 shares of stock which said profits were so received by said trustees, in the form of said stock dividend and amounted to 554 shares of the par value of $25 per share, or $13,600. . . .

"22. Plaintiffs further state that at the time of the declaration, payment and distribution of the surplus or net profits, earned by the above mentioned corporations and each of them, and distributed by each of them, and received by said trustees, in the form of stock divi-

dends, and which were declared upon certain shares of stock held by the said Nelson J. Hawley, Harry L. King and Albe W. King, as acting trustees, under the said will of Henry King, as aforesaid, and representing a portion of the surplus or net profits, earned by said corporations, and each of them, after the creation of said trust estate, as above set out, were paid in said shares of stock to them, as such acting trustees, as income and profits of said trust estate earned since its creation; that the whole of the surplus or net profits represented by said stock dividends and earned by said corporations after the creation of said trust estate, as above set out, were paid in said shares of stock to them, as such acting trustees, and was so received by said trustees, as income and profits of said trust estate; that the whole of the surplus or net profits represented by said stock dividends and earned by said corporations, and each of them, after the creation of said trust estate, so distributed, and delivered by said corporations to said acting trustees, and so received by said trustees, as aforesaid was, by the said trustees, willfully, wrongfully, and knowingly diverted by them and credited and applied to the *corpus* of said trust estate, thereby wrongfully depriving plaintiff, Bessie King Selleck, of her one-third portion of the entire net income and profits of said trust estate, as provided by said will, and to which she was and is justly entitled.''

The petition sets forth in detail the various transactions with reference to the stock dividends declared by the corporations in which the trustees held stock, which constituted the *corpus* of the estate. Plaintiff then alleges that according to the decisions of the courts, under the laws of the states of New York, Pennsylvania and New Jersey, stock dividends are declared to be net income and profit; that the corporations, which declared the stock dividends here in question, are corporations of the three named states.

The petition then charges that the trustees are unfriendly, hostile and unfair toward plaintiff; that the trustees have willfully and knowingly misappropriated and diverted to the *corpus* of the estate a large portion of the one-third share of the net income and proceeds due plaintiff by the terms of the will, with the corrupt purpose of benefiting Harry L. King and Albe W. King, remaindermen and trustees and the remainderman Henrietta Renick, the daughter of Nelson J. Hawley, the third trustee. The petition then enumerates and details numerous instances wherein it is alleged the actions of the trustees were contrary to the provisions of the will and antagonistic to plaintiff's interests. The charges detailed are in the main the same as those above referred to. For example, it is charged that the trustees, Harry L. King and Albe W. King, were also the executors of the estate and that the one-third income and profit, which

accrued during the period of administration and amounted to about $13,000 to which plaintiff was entitled, was diverted into the *corpus* of the estate, resulting in a benefit to the remaindermen, being the two trustees named and the daughter of the third trustee. Another transaction, alleged to have been antagonistic to plaintiff's interests, was the payment of the inheritance or stock transfer tax. It is also alleged that the trustees have paid to Harry L. King and Albe W. King each a sum equal to one-third of the net cash income of the trust estate, which had accrued between April, 1917 and September, 1927, amounting to about $60,000, that these payments were made contrary to the terms of the will, in breach of the trust and constituted a willful fraud upon plaintiff and her daughter Henrietta Renick, one of the three remaindermen. If necessary other charges made will be referred to in the opinion.

The petition concludes with a long prayer for relief, the substance of which is as follows: That the court decree plaintiff to be the adopted daughter of the testator; that the trustees be removed as trustees and the court appoint suitable persons in their places; that the court construe the provisions of the will with reference to the net income and profit of the trust estate to which plaintiff is entitled and to so construe the same as to mean and include surplus profits earned by the corporations in which the trust estate owned stock distributed in the form of stock dividends; that the trustees be ordered to pay plaintiff all undistributed cash income in the trustees' possession; that the court order the trustees to make certain monthly payments to plaintiff out of the income received by them. Plaintiffs also prayed that an accounting be had and the trustees be held and required to pay plaintiff any sum or sums with interest, found to be due her according to the terms of the will; that the trustee's be required to restore to the *corpus* of the estate sums wrongfully paid out as alleged attorneys' fees and sums paid to Harry L. King and Albe W. King; that the trustees be restrained from making any further payments to Harry L. King and Albe W. King as income until the final disposition of the case. Plaintiffs also prayed that the court decree that the laws of New Jersey and Minnesota be followed in the matter of the transfer and inheritance tax and that the laws of the States of Pennsylvania, New Jersey and New York be followed in determining the question as to what constitutes income and profit with reference to the stock dividends.

To this petition defendants filed what is denominated a speaking demurrer. The demurrer covers thirty-five pages of the abstract of the record.

Upon examination of the demurrer we find it sufficient as a general demurrer. In addition to the general demurrer there is a special

demurrer to each separate item of the petition. The allegations of the petition must be, for the purpose of a demurrer, taken as true.

The order of the court, after sustaining the demurrer, reads:

" 'Now at this day come the plaintiffs by attorneys and in open court state that they stand upon the fifth amended petition and decline to plead further; and it appearing to the satisfaction of the court that a general demurrer was sustained on the first petition and said petition adjudged wholly insufficient on the 27th day of December, 1921; that on the 9th day of May, 1927, the motion of defendant to make plaintiffs' amended petition more definite and certain was sustained, and that on the 26th day of September, 1927, plaintiffs were granted leave to withdraw their third amended petition; and that a general demurrer of defendants to the fifth amended petition was sustained, and said petition adjudged wholly insufficient on the 8th day of October, 1928, during the October term, 1928. It is therefore adjudged by the court that this suit be dismissed as to defendants and that said defendants recover from plaintiffs their costs in this behalf expended by them and that they have execution therefor.' "

The major portion of the elaborate briefs, filed in this case, is devoted to the question as to what is or should be included in the term "income and profit," as that term was employed by the testator in Articles V and VI of the will. It will be noted that in Article five the following language is used: "And the net income of one-third of my estate shall be paid to said Mrs. Bessie King Hawley, as herein provided." In Article VI we read as follows: "I further direct and provide that the entire net income and profit of the one-third share of my estate hereby given and bequeathed to said Henrietta Hawley shall be paid by the trustees herein named to her said mother, Mrs. Bessie King Hawley." It is appellant's contention that, according to the language used, it was clearly the intention of the testator that stock dividends are income and profit and should go to plaintiff and not to the *corpus* of the estate. Respondents on the other hand contend that, by the terms of the will, stock dividends belong to the *corpus* of the estate and the trustees should treat it as such and not deliver to plaintiff stock dividends derived from the stock held by the trust estate.

This question was first presented to this court in the case of Hayes v. St. Louis Trust Co., 317 Mo. 1028, 298 S. W. 91. Division One of this court in an exhaustive opinion, prepared by ELLISON, C., held that the term "income" did not include stock dividends. In that case the testator employed the following language:

" 'Said trustees shall take charge and possession of said rest and residue of my estate, collect the income, rents, issues and profits thereof and therefrom, and after deducting all proper and legal charges

and expenses incident to the management of said property and the execution of the trusts herein and hereby created, dispose of the net income from said trust property as follows: . . .' "

In the Hayes opinion this court reviewed and considered at length the decisions of the courts on this subject, throughout the land. Three different rules seem to have come to life by reason of the diversity of opinions. The Pennsylvania rule treats alike stock dividends and cash dividends. But, under this rule, the earnings from which the dividend is declared must have accrued since the creation of the trust estate in order that the life tenant may be entitled thereto. The Kentucky rule also makes no distinction between stock and cash dividends and under this rule it does not matter when the earnings were accumulated. All dividends declared after the creation of the trust estate are treated as income. The Massachusetts rule treats stock dividends as part of the *corpus* of the estate and cash dividends as income. This court followed the Massachusetts rule in the Hayes case. Appellants insist that the Hayes case does not apply to the case at bar. They point out that the testator in the Hayes case used the term "income," while in the case now before us the testator used the term "income and profit," which appellants insist is a broader term and plainly includes stock dividends. Appellants, however, seeing the force and effect of the Hayes opinion insist that it is not sound in principle and that the Pennsylvania and Kentucky rules are more in harmony with justice. Since this is, relatively speaking, a new question in this State we have again spent much time and labor examining the authorities upholding the different theories or the so-called Pennsylvania, Kentucky and Massachusetts rules. The opinion in the Hayes case fully answers every argument made against the Massachusetts theory or rule. We think it unnecessary to again write at length on this question and content ourselves with reaffirming the holding and reasoning in the Hayes case. The Hayes case was later followed by Division One of this court in Macdonald v. O'Day, 319 Mo. 857, 5 S. W. (2d) 374; Robert v. Mercantile Trust Co., 324 Mo. 314, 23 S. W. (2d) 32.

■ ██ Turning our attention now to the case before us we do so with the thought in mind that the intention of the testator is paramount. This intention, so to speak, must be gathered from the four corners of the will itself. By Article IV of the will, the residue, which in this case is the bulk of the estate, is given to three trustees for the use and benefit of the testator's two grandsons and Henrietta Hawley, the daughter of plaintiff, share and share alike upon certain conditions. In Article V the testator made a provision that in the event of the death of one or two of the three named beneficiaries before the probate of the will, the estate should pass to the survivors

or survivor, but that in any event the payments, provided for by the will, to the testator's son and his wife should be made and the net income of one-third of the estate should be paid to plaintiff. In Article VI of the will the testator directed the trustees to pay his son the sum of $600 per year during his lifetime and $960 per year to his son's wife during her lifetime. Article VI also provides that the entire income and profit of the one-third share given to Henrietta Hawley shall be paid to her mother, plaintiff herein, during her lifetime, less $200, which was to be paid to the testator's son, being one-third of the $600 given to him by the will. Direction is made that out of the net income from the property given to the grandsons the trustees shall pay to Mrs. Mary W. King, wife of the testator's son, the sum of $960 and also the sum of $200 out of each grandson's share to the testator's son. So as we view it the testator's intention, which to us is clearly expressed, was that the estate be given to the trustees for the use and benefit of the three persons named. The testator burdened the one-third share of Henrietta Hawley with the sum of $200 per year during the life of the testator's son, and further burdened it in that the entire income from this one-third share less the $200 mentioned should be paid to her mother. The two grandsons' shares were each burdened with the sum of $200 per annum during the life of the testator's son, and a further sum of $960 per year was charged one-half against each share to be paid to the wife of the testator's son. The will, when considered as a whole, clearly indicates that it was the intention of the testator that the *corpus* of the estate should in all events go to the three named, as beneficiaries of the trust. The only reason that a trust was created at all was to provide for the payment of the annuities. The testator expressly provided that in case of the death, prior to the probate of the will, of the three named, who were to receive the life annuities, the trust created by the will should not come into existence. The testator also provided that the trust should cease with the death of the three life annuitants.

There is nothing in the will to indicate an intention on the part of the testator that Henrietta Hawley should not share equally with testator's grandsons. Rather the contrary appears. Provision is made in the will that in case of the death of one of his grandsons such share should go to the survivors share and share alike.

The petition alleges that the testator's son, one of the annuitants, died since the trust was created. It, therefore, so happens that the share of Henrietta Hawley is carrying the greatest burden and that the entire income derived from her share must be paid to her mother. However, had Divine Providence so willed that plaintiff, the mother of Henrietta Hawley, should have been the first to answer the Eternal Summons, the share of Henrietta Hawley would have been relieved

of this burden. Neither do we find anything in the will that tends to show that the testator intended that one-third of the stock dividends, derived from the stock held by the trust estate, should be delivered to plaintiff. Such a course would be entirely out of harmony and inconsistent with the general scheme of the testator's will. It would not permit Henrietta Hawley to share equally with the grandsons. The will itself discloses that the testator was thoroughly acquainted with the manner in which corporations transacted business. Had he intended that plaintiff should receive stock dividends he would no doubt have made an express provision therefor. The will is lengthy and gives detailed instructions to the trustees with reference to the management of the estate, yet not a word to indicate that the stock dividends should go to plaintiff. The following statement of the court in Gibbons v. Mahon, 136 U. S. 1. c. 559, is appropriate to the occasion:

"In ascertaining the rights of such persons, the intention of the testator, so far as manifested by him, must of course control; but when he has given no special direction upon the question as to what shall be considered principal and what income, he must be presumed to have had in view the lawful power of the corporation over the use and apportionment of its earnings, and to have intended that the determination of that question should depend upon the regular action of the corporation with regard to all its shares." ■ We hold that by the use of the term "income and profit," the testator in his will did not intend to include stock dividends. [Hayes v. St. Louis Union Trust Co., 317 Mo. 1028, 298 S. W. 1. c. 94, 95(2); Macdonald v. O'Day, supra; Robert v. Mercantile Trust Co., 324 Mo. 314, 23 S. W. (2d) 1. c. 41 (4); Buder v. Franz, 27 Fed. (2d) 1. c. 113, 114 (7, 8) (9) (10); Long v. Rike, 50 Fed. (2d) 124 1. c. 131; Chase v. Union Natl. Bank of Lowell, 176 N. E. (Mass.) 508 1. c. 510 (4-6).] The terms "profit" and "income" are often used interchangeably and to a great extent have the same meaning. [31 C. J. 400, sec. 5, and cases cited under note 18. See, also, Chase v. Union Natl. Bank of Lowell, supra.]

■ Plaintiffs insist that the laws of the domicile of the corporations in which the trust estate owns stock should govern in determining the intention of the testator with reference to the meaning of the words "income" and "profit." In this we think plaintiffs are in error. The general rule is that the laws of the testator's domicile must be applied in determining the intention of the testator. It is apparent that any other rule would result in confusion. [Jones v. Park, 222 S. W. 1018, 282 Mo. 610; In re Riesenberg's Estate, 90 S. W. 1170, 116 Mo. App. 308; Freund v. Schilling, 6 S. W. (2d) 673; Long v. Rike, supra; 40 Cyc. 1382, 1383.]

■ Plaintiff's petition asserts that the trustees have wrongfully and contrary to the terms of the will paid to Harry L. King and Albe W. King, two of the beneficiaries under the will, two-thirds of the cash net income of the trust estate less the annuities with which their shares were charged. Plaintiffs contend that this net income should have been added to the *corpus* of the estate until such time as the trust is ended, when the whole of the estate should be divided between the three remaindermen. Plaintiffs plead that by these payments plaintiff and plaintiff's daughter, Henrietta Hawley, have been defrauded of large sums of money to which they are entitled.

The determination of this question depends entirely upon the intention of the testator as expressed in the will. In construing wills courts should if possible give effect to every provision made by the testator. [Snow v. Ferril, 320 Mo. 543, 8 S. W. (2d) l. c. 1012 (1, 2).] In this case the testator devised his estate to three beneficiaries. The testator, by his will, created a trust estate so as to hold the *corpus* of the estate intact to insure the payments of certain life annuities. By the will the estate is divided into three parts. One part is charged with the entire income during the life of a certain person. The other two shares are charged with certain separate amounts during the lives of two annuitants. If the will should be so construed that the testator intended that the trustees should retain all net income derived from the trust estate in excess of the amounts necessary to pay the life annuities and at the end of the trust the estate be divided into three equal parts, it would entirely destroy those provisions of the will that specify the share against which the life annuities shall be charged. The testator especially provided in his will that the life annuities created should be a charge and lien on the shares designated, during the life of the annuitants. It seems clear that the testator desired to bequeath his property one-third to Henrietta Hawley and the remaining two-thirds to his grandsons. The mother of Henrietta Hawley to receive the income of the one-third devised to her daughter less $200 per year devised to Henry L. King. The two-thirds devised to the grandsons was charged with a total of $1,360 per year to be paid to the parents of the grandsons. By Article IV of the will, the trust is expressly declared to be for the benefit of the grandsons and Henrietta Hawley, subject to certain conditions. Those conditions are the payments of the life annuities. Those payments have been made and the charge and lien, created by the will against the grandsons' shares, have been discharged. ■ The law does not favor postponement of the enjoyment of a beneficial interest in an estate. [Hamilton v. Lewis, 13 Mo. 184.] The payments to the grandsons of the net income derived from their shares of the estate was, therefore, in

1056

entire accord with the intention of the testator as expressed by his last will and testament.

Plaintiff alleges that during the period of administration there was a net income of $30,000; that the trustees have refused to pay plaintiff one-third of this sum to which she is rightfully entitled and have wrongfully added that sum to the *corpus* of the estate. By the will of the testator, the trust estate consisted of the residue and remainder of the testator's estate, after the payment of the testator's debts and the payment of certain specific bequests. The trustees' duties did not commence until the executors paid the residue over to them. It was not the duty of the trustees to make an accounting and ascertain the net income, if any, that might have accrued during the period of administration. So far as the trustees were concerned, whatever they received from the executors constituted the *corpus* of the estate, as was recently said in a similar case. In re Holmes' Estate, 328 Mo. 143, 40 S. W. (2d) l. c. 618; "The trust estate provided for could not be determined and did not come into existence until the administration was completed and final settlement made." We do not mean to say that under the terms of the will plaintiff was not entitled to one-third of the net income accruing during administration. Plaintiff alleges that the executors in fact did pay her certain amounts, but that only a small part of her share was paid to her by them. If the executors in fact did not pay plaintiff all she was entitled to she should have filed exceptions to the settlements made by the executors in the probate court.

Plaintiff's complaint with reference to the executors' payment of $1,975.20 to the State of Missouri cannot be litigated in this proceeding. The executors had been discharged four years prior to the filing of plaintiff's suit. If plaintiff desired to object to the payment of this sum she should have filed exceptions to the final settlement of the executors in the probate court. [In re Holmes' Estate, 328 Mo. 143, 40 S. W. (2d) 616.] The trustees were under no duty to file exceptions for her. The trustees' duties began when they accepted the trust and received the *corpus* of the estate from the executors. One of the trustees named in the will, Kotany, did not accept the trust. How, under the law, could he be held responsible for the acts of the executors? Neither can the trustees, who accepted the trust, be held responsible for the actions of the executors.

Trustees of an estate are charged with the management thereof. In many respects they must of necessity exercise their discretion as to what course to pursue for the best interest of the estate. It is the duty of the trustees to pay all taxes and assessments against the estate. [39 Cyc. 337.] By the petition, the trustees are charged in this case with having wrongfully paid to the State of New Jersey the sum of $236.28 as an inheritance or stock transfer tax and a like tax to

the State of Minnesota in the sum of $161.38. Considering only for the purpose of this argument that the validity of the tax was a debatable question, to have litigated these questions would in all probability have cost the trust estate, even if successful, more than the amount of the tax. The trustees ought not, under the facts pleaded, be made to account for the taxes so paid. The petition charges that these payments were made for the corrupt purpose of cheating, wronging and defrauding the plaintiff. These allegations, without pleading facts, do not lend any force to the petition.

With reference to the bond of the trustees the will requested that the executors, as such executors, and the named trustees be not required to give bond. The will further provided: "But this waiver of bond shall not apply to any other person or persons." Defendants, Albe W. King and Harry L. King, were named as executors. They were appointed trustees after their discharge as executors in lieu of two of the trustees named in the will. Plaintiffs contend that the waiver of bond contained in the will applied to the defendants as executors but not as trustees. In this we think plaintiffs are correct. By the terms of the will the testator plainly indicated that only the named trustees should act without bond. The two trustees, Harry L. King and Albe W. King, should be required to give bond if they are to continue as trustees. The circuit court should fix the amount of the bond and require the trustees to make annual reports to the court. [Gartside v. Gartside, 20 S. W. 669, 113 Mo. 348.]

Plaintiff also prayed the court to decree that she be declared the adopted daughter of the testator. The petition alleges that the testator agreed to adopt plaintiff as his daughter. The will of the testator stated that plaintiff "lived with me and my wife during the latter's lifetime as our daughter and in whose home I have lived since my wife's death, although she was never adopted by either of us as a daughter in accordance with the law." Defendants contend that by the quoted clause the testator expressly declared that plaintiff was never adopted and that she be not considered as a child. Plaintiff contends that by this clause the testator expressly declared that plaintiff should have been adopted and construed the words of the testator as an apology for not having done so. It is evident from the terms of the will that the testator held the plaintiff in high esteem. His affection and love for her are revealed by the provisions of the will wherein plaintiff and her daughter are placed on a par with his own children. However, an equitable decree of adoption in plaintiff's favor could not affect plaintiff's rights. Plaintiff accepted the terms of the will. We have held that the trustees did not abuse their discretion by paying the stock transfer or inheritance tax without first litigating the question of their legality, which depended upon

the question of whether plaintiff was a child of the testator. No substantial rights could be gained for plaintiff by an adoption decree. In 21 Corpus Juris, page 157, section 138, we read:

"A court of equity will not entertain a bill simply to vindicate an abstract principle of justice, where no actual benefit is to be derived by the party who seeks to exercise such right, nor injury suffered by the commission of the wrong complained of, or where the injured party would be entitled, at most, only to nominal damages. To justify relief it must be sought in good faith to protect a substantial right and redress or prevent an appreciable wrong."

See, also, Bouchard v. Zetley, 220 N. W. (Wis.) 1. c. 213 (6-8); In re Hawkins Mortg. Co., 45 Fed. (2d) 1. c. 939, 940 (2-4); Madson v. Madson, 4 Pac. (2d) 1. c. 478 (5, 6) (7) (8); Collins v. Martin, 248 S. W. (Mo.) 1. c. 946 (2,3). To litigate this question would entail a long trial. No substantial benefit could in any event inure to plaintiff. A court of equity should, therefore, not take jurisdiction.

██ Removal of trustees: The testator by his will appointed defendant, Nelson J. Hawley, the then husband of plaintiff, as one of the trustees. Kotany was also named as a trustee, but refused to act. Kotany, so far as the petition discloses, had no interest whatever in the estate. James L. King of Topeka, Kansas, the other trustee named by the testator, had no interest in the estate. The testator it seems intended that the trust estate should be administered by disinterested trustees. The testator had the opportunity but did not name his own son, Henry L. King, a beneficiary under the will, as a trustee. Nor did he appoint as trustees his two grandsons, who were beneficiaries under the will. So the trust estate in so far as plaintiff was concerned, as created by the will, was to be administered by trustees, who were either disinterested in the estate or friendly to plaintiff. Subsequent events rapidly changed this situation. At the time the fifth amended petition was filed the trustees were Nelson J. Hawley, who was then the divorced husband of plaintiff Albe W. King and Harry L. King two of the principal beneficiaries of the estate. The petition alleges that the grandsons of the testator, now trustees, rebuked plaintiff for referring to the testator as her father. The petition also alleges that Albe W. King was appointed trustee over plaintiff's protest. It is alleged that the trustees retained $500 out of plaintiff's income for attorneys' fees, when in fact no attorneys' fees had been allowed by the court. The petition also charges that the trustees have paid large sums as attorneys' fees and wrongfully deducted such charges from the net income of plaintiff's share. It is charged in the petition that the trustees have refused to permit plaintiff to inspect the accounts of the trustees, contrary to the provisions of the will. It will be noted that the will

expressly grants the right of inspection to the beneficiaries. Many of these allegations of the petition, charging the trustees with being unfriendly, are not of a serious nature standing alone, but they imply that the trustees are hostile and unfriendly toward plaintiff. The interests of the trustees in the estate are antagonistic to the interests of plaintiff.

Albe W. King, it is alleged, was appointed as trustee over plaintiff's protests. Persons having a beneficial interest in a trust estate should not be appointed to fill a vacancy especially where there are conflicting interests between such person and the *cestui que trust*. [39 Cyc. pp. 275, 283.] Considering the feeling that existed between plaintiff and the grandsons of testator, as alleged in the petition, the grandsons should not have been appointed as trustees.

The petition asks that the trustees be removed and that suitable persons be appointed in their places. Courts of equity are reluctant to remove a trustee. However, if it is manifestly for the interests of the estate of the *cestui que trust* a court should exercise that power and remove the trustee. In 39 Cyc. page 263, we read:

"Where the trustee occupies antagonistic relations to the trust property because of his personal interest therein, or where inharmonious or unfriendly relations exist between the trustee, or between them and the *cestui que trust,* there may be sufficient reason for removal."

It is usually a question of fact whether or not just cause exists for the removal of a trustee. Taking the allegations of the petition as true, which we must do for the purpose of the demurrer, a court would be authorized to remove the trustees in this case. Had the circumstances of the parties and their relations to each other, as revealed from the facts pleaded in the petition, been such at the time the testator executed his will as they stood when the amended petition was filed in this case the testator certainly would not have named the present trustees to administer the trust estate. The testator would not have placed the plaintiff in such an embarrassing position. We must presume that the testator intended the plaintiff to enjoy in its fullest extent the net income of the one-third share of the trust estate. Peace of mind is of more value in the enjoyment of life than property or money. The relations existing between the trustees and the plaintiff, as the *cestui que trust* in this case, as pleaded in the petition, tend to destroy that peace of mind and defeat to a great extent the intention of the testator when he created the trust estate.

The trial court should have heard the evidence, if any, plaintiff had to sustain the allegations of that part of the petition alleging that the trustees were unfriendly and hostile and that their interests were antagonistic to plaintiff's. [26 R. C. L. 1276, sec. 126.] The

1060

circuit court should in case the trustees are not removed require Albe W. King and Harry L. King, trustees, to give bond as trustees. The petition alleges facts sufficient to state a cause of action authorizing the court to determine upon a hearing whether or not the trustees should be removed. [39 Cyc. 263; Gartside v. Gartside, 113 Mo. 348, 20 S. W. 669; Ronald McDonald v. Mary O'Donnell, 8 Fed. (2d) 792, 45 A. L. R. 328; In re Dreier's Estate, 235 N. W. (Wis.) l. c. 442 (6); Overell v. Overell, 248 Pac. (Cal.) 310; May v. May, 167 U. S. 310.]

The general demurrer should not have been sustained. We have indicated, for the guidance of the trial court, wherein and as to what items the petition does not state a cause of action.

The judgment of the circuit court should be reversed and the cause remanded for trial. It is so ordered. *Cooley* and *Fitzsimmons*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All of the judges concur.