HUNT *v.* SALON DECOIFFURES, D.B.A. RIGGS LEMAR BEAUTY COLLEGE.

(No. 82 CVF 299—Decided April 27, 1982.)

Akron Municipal Court.

*Mr. Irving A. Portman,* for plaintiff.
*Mr. Gerald J. Glinsek,* for defendant.

COLOPY, J. This cause was tried before the court on April 1, 1982. Plaintiff is seeking to recover the sum of $425 alleged to be due to plaintiff under the refund provisions of a certain "Agreement for Cosmetology Training" (the "Agreement") entered into by and between plaintiff and defendant on October 6, 1980, and for infliction of emotional distress, for a total prayer for recovery of $1,500.

Defendant is a beauty college located in Akron, Ohio. Plaintiff desired to become a licensed cosmetologist and entered into the Agreement with defendant in order to receive the necessary training. Plaintiff paid the "total purchase price" under the agreement in full on the date of its execution. This consisted of a registration fee of $100, tuition of $865, and instructional materials of $235, for a total purchase price of $1,200. Defendant was to provide in consideration of the total purchase price the instructional materials and 1,500 hours of classroom and practical instruction.

The defendant introduced into evidence defendant's Exhibit 1, which consists of ten separate "Student Record & Summary Sheets." The school is required to maintain these records pursuant to R.C. 4713.15(D) where it is stated that schools of cosmetology shall "keep a daily record of the attendance of each student, and a record devoted to the different practices." These records (time sheets) are referred to in Ohio Adm. Code 4713-9-04(F) as "time sheets for students' daily records."

Plaintiff started classes on October 6, 1980. She terminated her enrollment on November 13, 1981. That her termination of enrollment in defendant school was voluntary is not in dispute. Defendant was absent a great deal during the period of her enrollment. At the time her enrollment ended she had only accumulated 325 class hours, whereas if she had attended every scheduled class her program included, she would have accumulated 1,250 hours. The main reason for defendant's poor attendance record was ill health. She took a leave of absence beginning in early March 1981. She resumed attendance sometime in July 1981. In terms of days of attendance plaintiff attended for only 90 out of 169 days.

Plaintiff is seeking to recover a refund under the "Refund Policy" provision

of the Agreement which provides in relevant part:

"In the event a student voluntarily discontinues his/her training after the start of classes the following refund shall apply:

| "Percent of Course Completed | Amount School Retains |
|---|---|
| 0.1 to 4.9% | 20% |
| 5 to 9.9% | 30% |
| 10 to 14.9% | 40% |
| 15 to 24.9% | 45% |
| 25 to 49.9% | 70% |
| over 50% | 100% |

"The cost of extra items, which are the related instruction material totaling $235.00 are not a part of the refund computations."

Defendant has denied any obligation to make any refund under the "Refund Policy" provision because of plaintiff's poor attendance record. The Agreement contains the following clauses:

"3. Student agrees to comply with all of the Rules and Regulations of the School which will be made known to her/him and which may be changed from time to time, and failure to do so may be deemed proper grounds for dismissal. Student agrees to diligently apply him/herself to all classes, lessons, duties, and tasks assigned, and to do the best of his/her ability to live up to the highest standards of conduct and workmanship. It is understood by the Student that part of the school curriculum includes practice by the students upon each other of the various subjects of Cosmetology.

"* * *

"6. All students must attend regularly according to classification and after the first 300 hours of curriculum, day students are required to include Fridays, Saturdays, and days before holidays as part of their regular schedule and training program.

"7. All absences must be explained and may be executed [sic] by the Director. If reasons given are adequate and justifiable, Students not in attendance over a 30 day period must request a Leave of Absence, stating reason and addition [sic] time satisfied that reason given has sufficient merit and his decision shall be final and binding; providing that the time requested does not conflict with the Laws, Rules, and Regulations of the Ohio State Board of Cosmetology as the limits allowable for completion of Cosmetology Courses.

"* * *

"14. It is the essence of this Agreement that both parties use their best efforts and work as hard as possible to the end that the student will obtain the knowledge and training he wishes and needs, in return for the money the Student has agreed herein to pay for same."

In interpreting this contract the court must apply many rules of construction including, but not limited to, the ones discussed hereafter. As stated in 18 Ohio Jurisprudence 3d 34, Contracts, Section 149:

"A fundamental and frequently applied general rule of construction is that if there is doubt or ambiguity in the language of a contract the document is to be construed strictly against the party who prepared it or selected its language and in favor of the party who took no part in its preparation or in the selection of its language."

To like effect it has been held that ambiguous language in a contract which is contained on a printed form which has been prepared by one of the parties is to be construed most favorably to the other party. *West* v. *Ankney* (C.P. 1956), 73 Ohio Law Abs. 56 [60 O.O. 449]. Provisions of an "adhesion contract," which the Agreement clearly is, "should be construed in accordance with the understanding attached to them by laymen unversed in the law." *Standard Oil Company of Cal.* v. *Perkins* (C.A. 9, 1965), 347 F.2d 379, 383. The construction must be reasonable, just and practical. See discussion in 18 Ohio Jurisprudence 3d, Contracts, Sections 158-160.

In the case before the court, apart from a consideration of any breach by plaintiff of the Agreement, there is only one condition precedent to recovering under the Refund Policy — voluntary discontinuance in the program. As earlier indicated plaintiff's discontinuance in the program was voluntary and that is not an issue.

Defendant is contending that plaintiff's poor attendance in the program constitutes a breach of contract. This is set forth as the affirmative defense of "failure of consideration" in defendant's answer. That defendant had a poor attendance record is without question. Taken alone this fact might seem to constitute a breach of paragraph 6 of the Agreement. However, paragraph 7 indicates that absences may be excused by the director. What is the penalty if the director does not excuse the absences? It is nowhere stated in the Agreement.

Since the Agreement speaks of voluntary discontinuance in the program, perhaps under some circumstances excessive absences might lead to a justifiable expulsion from the program. But the court does not need to address this question because plaintiff was not involuntarily dismissed from the program. The court finds that the defendant impliedly excused her absences by allowing her to continue in the program. It is to be noted that her leave of absence was with permission. Mr. Semilia, owner and operator of defendant, testified that he was willing to allow plaintiff to continue in the program. As far as the "due diligence," "best efforts" and "hard work" covenants of paragraphs 3 and 14 are concerned, the only basis alleged for their breach is the poor attendance of plaintiff. Having found this poor attendance to have been excused by implication there is no basis for finding a breach of either of these two paragraphs.

Even if the court were to have found that there had been a breach by defendant of any of the paragraphs just discussed, the court would not allow the plaintiff to recover under the "Refund Policy." First of all the court finds that the covenants contained in paragraphs 3, 6, 7, and 14 are independent of the promise of the defendant to make refunds under the "Refund Policy," unless breach of those covenants has resulted in involuntary dismissal prior to the request for the refund. It is stated in 17 American Jurisprudence 2d 804-805, Contracts, Section 362, that:

"Apart from conditions, expressed or implied in fact, upon the fulfillment of which a promise is made to depend, the general question also arises as to whether performance by one party as promised is a condition to recovery from the other party. While it has been said that a party cannot recover for a breach of contract, if he fails to comply with the contract himself, this is too broad a statement. That is, whether performance by one party is a condition to his recovery from the other involves the consideration, in the main, as to whether the promise of the one who seeks recovery is dependent or independent."

It is further stated in 17 American Jurisprudence 2d 753, Contracts, Section 322, that:

"Considerations partly of justice and partly of presumable intention guide the courts in determining whether a particular promise shall be placed in one class or in another.

"According to the modern rule, promises are to be construed as dependent or independent according to the intention of the parties and the good sense of the case."

It must also be pointed out that even if the plaintiff were in breach of the covenants in question, that breach would have to be a material failure to provide the agreed upon consideration before defendant could refuse to pay under the Refund Policy. Certainly the main consideration to be provided by the plaintiff

was the $1,200 total payment price which had been paid by the plaintiff in advance.

The Restatement of Contracts 2d, Section 241, which does not use the dependent-independent covenant analysis states, at page 237, that:

"In determining whether a failure to render or to offer performance is material, the following circumstances are significant:

"(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

"(b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

"(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

"(d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;

"(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing."

In the case before the court, assuming plaintiff had breached paragraphs 3, 6, 7, and 14 of the Agreement or any one or more of same, the plaintiff will not be deprived to any appreciable extent of the benefit which she reasonably expected because the primary consideration for the schooling provided to the plaintiff is the purchase price paid for the contract, not the attendance and diligence of the plaintiff in completing the program. The court also finds that if the plaintiff is not allowed to recover a refund, a forfeiture will result. No layman reading the Agreement would likely conclude that his or her right to a refund depended on attendance, diligence, etc.

Thus the court concludes that the plaintiff is entitled to a refund under the Refund Policy provisions of the Agreement. There can be no doubt as to how the Percent of Course Completed is to be determined. R.C. 4713.15 requires the completion of 1,500 hours of instruction for licensing as a cosmetologist. The Agreement provides that the defendant will furnish 1,500 hours of instruction. The time sheets keep careful record of the plaintiff's total hours of instruction. At the time of her discontinuance in the program, plaintiff had completed 325 or 21.67 percent of the 1,500 instructional hours. Thus under the terms of the Agreement she was entitled to a refund of 55 percent of a sum equal to the total purchase price of $1,200 less the $235 paid for related instructional materials. This would be 55 percent of $965 or $530.75.

The court finds that the plaintiff has incorrectly calculated the amount of the refund under the Refund Policy. The plaintiff has multiplied 55 percent times $1,200 for a product of $660. From this was deducted the $235 paid for related instructional materials for a difference of $425, being the amount prayed for on account of the provisions of the Refund Policy. Since the amount prayed for is $425, the court will enter judgment for this amount rather than the higher amount.

The plaintiff is also seeking damages for great emotional distress to her nerves which she alleges defendant caused her on November 13, 1981. The court finds that plaintiff has not established by a preponderance of the evidence that defendant caused her great emotional distress to her nerves on that date. Therefore, no recovery will be allowed for this claim in tort.

*Judgment accordingly.*